## RACHEL EVANS v. GEORGE L. DANA.

An express grant of the right of access to, and to take water from a well in close No. 1, as appurtenant to close No. 4, confers no such right upon close No. 3, adjoining, because in the same ownership as No. 4, so as to authorize the owner to pass through his close, No. 4, to the well, and take water therefrom, for the use of his close, No. 3.

Only easements apparent and continuous, and necessary to the proper enjoyment of the part granted, or one of the parts granted, pass by implication of the grant, upon the severance of an estate, one part of which has served the uses of another part; and this implication proceeds upon the presumed intent of the parties to the deed or deeds.

If the user in the land of another has been uniform and continuous for a period of at least twenty years, by the acquiescence of the owner of such land, and under an adverse claim of right, and such owner or owners have, during this time, been in possession and free from legal disabilities, these facts concurring, are, in this State, conclusive evidence of a grant in conformity to the user.

THIS was an action of trespass, qu. cl., for breaking and entering the plaintiff's close in Cumberland, and interfering with the right of the plaintiff in a certain well situated thereon, and wrongfully, and without the permission of the plaintiff, drawing water therefrom.

The case was submitted to the court in fact and law, under the general issue, either party to be entitled to introduce any evidence that would be pertinent to any special plea or replication whatsoever. The facts are sufficiently stated in the opinion of the court, as illustrated by the accompanying plat.

*Weeden, with whom was Bradley, for the plaintiff.*
*Knowles, for the defendant.*

Evans *v.* Dana.

BULLOCK, J. This case was tried to the court upon the law and the fact. The action is trespass *quare clausum*, for breaking and entering the plaintiff's close, situate in Cumberland, and interfering with the right of the plaintiff in a certain well upon said close, and drawing water therefrom wrongfully. Plea, the general issue, with the right in either party to offer, in evidence, any facts relevant under any other issue.

The plaintiff's possession, and the acts by the defendant constituting the alleged trespass, were admitted; and the defendant claimed, that by virtue of the ownership of himself and wife, in closes contiguous to that of the plaintiff, he had an easement in the well mentioned in the declaration.

It was admitted, that prior to January 13th, 1842, the plaintiff's close, designated upon the plat, in the case, as No. 1, and the closes of the defendant, designated thereon as No. 3 and No. 4, constituted with other lands one close, and were the property of one John Keene; that the plaintiff, or those under whom she claims close No. 1, derived title thereto from Keene, by his conveyance thereof in the usual form, bearing date February 17th, 1842, and recorded March 22d of the same year, and that the well in question is wholly upon this close; that by deed dated on the 13th day of January, 1842, and recorded on the 2d day of June, 1842, Keene conveyed close No. 4 to one Newell; that under the seals and signatures of Keene and his wife to this deed, which signatures are attested by two witnesses, and over the acknowledgment is the clause following :—" On the day of the

date aforenamed, it was agreed by and between the parties to the aforewritten instrument, in presence of the witnesses thereunto, that the grantee, his heirs and assigns, shall and may, at all times forever hereafter, enjoy the privileges of passing and re-passing to and from the well on the land of the grantor, and of taking water from the same, at all times, without molestation from the grantor, his heirs or assigns."

(Signed,)     JOHN KEENE.  [L. S.]:"

which clause was also recorded at the time, and in connection with the deed; that on the 6th day of October, 1856, Newell conveyed the close No. 4 to the wife of the defendant; that this last named deed did not contain any express grant of the ease-ment in question, but did contain an express reference by name and date, to his deed from Keene, and the usual words,—" with all the appurtenances, privileges and commodities to the granted premises belonging or in any wise appertaining;" that Keene, subsequent to January, 1842, but the precise time whereof did not appear, duly conveyed the close No. 3, and that by sundry mesne conveyances, it came, on the 21st of March, 1845, to the wife of the defendant; that none of these several conveyances of close No. 3 contain any express grant of an easement in said well, but do contain the usual words,—" with all the appurtenances, privileges and commodities to the granted premises belonging, or in any wise appertaining."

It was further admitted, that the dwelling house and barns of the defendant, at the time of and long before the alleged trespass, stood upon close No. 3 ; that the water taken from the well was for the use of this house and these barns ; and that it was taken by the defendant, at some times, over and across close No. 2, (owned by the defendant's brother-in-law,) and, at other times, over and across close No. 4, owned by the defendant's wife; it was also obvious from the plat, and so appeared in evidence, that much less of the plaintiff's land was traversed in reaching the well, by following a direct course across close No. 2.

The plain right of the defendant and of others, occupants of close No. 4, upon the facts stated, *to an easement* in the plain-tiff's well, *for the use of that close*, for all the ordinary purposes

for which a well is used, was not directly in issue; and the evidence, so far as connected with this right, is immaterial.

In further support of an easement, as appurtenant to close No. 3, the defendant, a witness, testified, that he had known the premises for about thirty years; that when he first knew them, Keene had a blacksmith's shop on close No. 3, which was removed in 1841 or 1842; that the occupants of this shop were supplied with water from this well; that afterwards an oyster saloon was erected upon this close, which was removed about the month of March, 1845, when the defendant's wife purchased; that the occupants of this saloon procured their water from this well; that in 1846 or 1847, the defendant erected the house now standing upon close No. 3, and that since that time he and his family had used this well; that last summer (1862), the plaintiff's agent told the defendant, if he, the defendant, did have a right to the well, it was over the close No. 4; that afterwards, in going to the well, he did pass over and across close No. 4; that he did not recollect that any one had forbidden his taking water from the well, but that about this time the curb over the well was locked; that for twenty-five years before this action was brought, the different occupants of closes Nos. 2, 3, and others, had procured their water from this well; that he had always kept, or aided in keeping, the well in repair, and this without any understanding with the plaintiff to that effect, or without any obligation on the defendant's part to do so; and that he had always claimed a right of access to the well. This was all the evidence on the part of the defendant.

In rebuttal of this evidence, the plaintiff called Daniel Wilkinson, 2d, who testified, that he was the son-in-law and agent of the plaintiff; that he had known the premises for twenty-five years and upwards; that the blacksmith's shop referred to was torn down about twenty-eight years ago; that after Keene, he, the witness, and one Millard, owned the closes No. 2 and No. 3, and sold close No. 3 to Edward Millard, who put up the oyster saloon, and that it remained upon the lot above four months; that the defendant, so long as he had used the well, had contributed to keep it in repair, and that the use of the well by him and others, had always been by the sufferance of the plaintiff; that others,

some of whom had used the well for thirty years, claimed no right, and, at the witness' request, had desisted from the use, when the water was low or scant; that witness told the defendant that he did not consider that he, the defendant, had any right, but if so, it was "round by the Pardon Newell lot," or close No. 4; but that the plaintiff did claim and had claimed a right. This was all the testimony on the part of the plaintiff.

There is no such easement as is claimed by the defendant to exist in close No. 3 created by any express grant. If such easement exist, it must be therefore by an implied grant, or a *prescription*. An easement cannot arise by way of implication from an express grant, unless there be some circumstances connected with the grant, or the estate granted, which show that the easement claimed is necessary to the enjoyment of the estate granted, or to its proper enjoyment. Whether the right is necessary to the proper enjoyment of the estate, is a question often complex and difficult of solution; the principle, however, is settled, and the difficulty arises only in its application.

If a man owns a mill, and an artificial canal or race-way leading the water to the mill, and he grants the mill and the land upon which it stands, but not the race-way, it is held, that the race-way, or the right to use the water through the race-way, passes, by implication. *New Ipswich Factory* v. *Batchelor,* 3 N. H. 190. But if a man, owning two lots of land, permits one of them to be drained across the other, and he then grants both lots, at one time, to different parties, saying nothing about the drain, it was held, that the lot drained acquired no rights in the drain by implication, if it could be drained in any other way. *Johnson* v. *Jordan*, 2 Met. 234. The case of *Kenyon* v. *Nichols*, 1 R. I. 417, was cited, where it was held, that if a heritage *be severed* into two or more parts, in respect to which there had been continuous and apparent easements used by the owner— such an easement would pass, by implication, with the dominant estate, although it was not an easement proper in the owner of the heritage; but this "implication proceeds upon the presumed intent of both parties to the deed, that the grantor of a part is to use that part, as the grantor used it before the severance; and it has been said, that whether this intent is to be presumed

Evans v. Dana.

against the grantor, depends upon whether the right is necessary to the proper enjoyment of the estate granted." 2 Washb. Real Prop. 37, 38. We see no such presumed intent or necessity in the case before us.

An easement by prescription presumes a lost grant. If the user, in the land of another, has been uniform and continuous, for a period, in this State, of at least twenty years, by the acquiescence of the owner of such land, and under an adverse claim of right, and such owner or owners have, during this time, been in possession, and free from legal disabilities, these facts concurring are conclusive evidence of a grant in conformity to the user. It is unnecessary to apply this principle to the evidence in this case in detail. These facts not only do not concur, but do not even exist. There has been no such uniform and continuous user; by the defendant or those under whom he claims, and no such acquiescence by the plaintiff, as are necessary to establish a right by prescription. In regard to the right claimed to exist as appurtenant to close No. 3, to take water from the plaintiff's well over and across close No. 4, it is sufficient to say, that an easement is a burden upon the servient, and a right only in the dominant estate; and when created, and defined by an express grant, cannot be extended beyond its plain language or clear intent. The easement appurtenant to close No. 4 confers, therefore, no rights upon close No. 3, and it makes no difference that they are now owned by the same party.

The issue on the part of the defendant is not maintained. As it was suggested that this action was only to test the right, judgment will be rendered for the plaintiff for *one cent* damages, and costs of suit.