Pierce *v.* Brown.

---

JEREMIAH C. PIERCE *v.* STILLMAN BROWN.

### *Mortgagor and Mortgagee. Trespass.*

The estate and right of possession are given to the mortgagee by our statute, after condition broken, and he may after condition broken, sustain his action of ejectment, against the mortgagor or his grantees, without notice to quit.

Upon the death of a mortgagee before foreclosure, his right and interest in the mortgaged premises vest in his executor or administrator, to be administered as assets belonging to the estate.

It is immaterial when an acknowledgment of an instrument is made, if done when offered, it may be read in evidence.

Where A. was tenant under the mortgagor, and afterwards purchased the mortgage, (after condition broken,) and at the same time notified the mortgagor that he held the premises under the mortgage, it was held, that this was a repudiation of the tenancy, and a dissolution of that relation, and that his possession thereafter was adverse, and that there was no necessity of surrendering the possession to the mortgagor, and then bringing his action of ejectment, for A. had such title and possession, as would enable him to sustain an action for trespass committed while holding such adverse possession.

Where the premises are described by references to the *lines* and *lands* of adjacent proprietors, and the calls of the deed can be answered, and the land in dispute be included or excluded, and the quantity of land which the parties intended to mortgage was a lot containing about forty acres, as expressed in the deed, and

this statement is verified only by including the land in dispute in the mortgage, this circumstance in the absence of all possible motive not to include it with the remainder of the lot, the whole lot will be considered as covered by the mortgage, when such construction answers all the calls of the deed, and manifestly carries into effect the intention of the parties.

TRESPASS *quare clausum fregit.* The declaration described the land as follows : " In a plea of trespass, for that the defendant on " the second day of April, A. D. 1849, at Whiting in the county " of Addison aforesaid, and on divers other days and times between " that day and the commencement of this suit, with force and arms, " broke and entered the plaintiff's close situated in Whiting afore- " said, and bounded on the south by land owned by widow Murray " and James Chatterton,— on the west by land owned by Justus " F. Brown,— East by lands owned by Platt Ketcham and by Hi- " ram Brown, and north by lands owned by Hiram Brown and " lands of Ezra L. Needham and others, &c." Plea the general issue, and trial by jury. The following plan was proved on the trial and made part of the case.

```
Fuller          N.                          Hiram
Brown's    Munson Pendleton, So. line.     Brown's
Corner.                                      Lot,
                                          S. W. Cor.   Hiram Brown's
                                                           Farm.

W.        41 Acres in whole lot.      Disputed Line.  9 Acres.   E.

                 S.                      Eber Murray's land.
```

The plaintiff, on trial, gave evidence tending to prove his pos-session of the premises described in his declaration and the com-mission of the trespasses as therein alledged. It was also proved that the title to said premises had been in one Ira Brown for some thirty years, and that he conveyed the same to the defendant, by deed dated the 16th of October, A. D. 1848. It further appeared in evidence, that the plaintiff went into possession of the premises and the entire tract of land described in the mortgage, hereinafter mentioned, from the said Ira Brown to Appollos Austin, under some kind of a lease or agreement with said Ira Brown in the spring of 1847, and continued such occupation until July or Au-gust, A. D. 1848.

The plaintiff offered in evidence the said mortgage deed from Ira Brown to Appollos Austin, deceased, dated the second day of May, A. D. 1842, which described the land as follows, " a certain " piece or lot of land in Whiting, beginning in the north-east corner " of Fuller Brown's land, thence east, on M. Pendleton's south line, " to Hiram Brown's land, thence south, to the north line of a lot " formerly owned by Eber Murray, thence west, on the north line " of said Murray's land to, &c., containing about forty acres of " land." The plaintiff also offered in evidence, the assignment of said mortgage, dated the 17th day of April, 1848, and recorded the 22d day of May, 1848. The assignment was executed by G. A. Austin, executor of A. Austin; the acknowledgment of the said assignment was dated the 21st day of May, 1851, and recorded the 5th day of June, 1851. The assignment and certificate of the town clerk, were all upon the back of the said mortgage. The plaintiff also offered the note described in said mortgage, for the sum of $873,00 payable in three years from date, and interest annually, and the indorsements thereon. It was admitted that Gustavus A. Austin was the executor of the will of Appollos Austin, deceased, and that his signature upon the back of the note and to the assignment, was genuine.

The plaintiff introduced evidence tending to prove, that in July 1848, he and Ira Brown were on the mortgaged premises, some distance west of the premises conveyed by said Ira Brown to the defendant, and they had some disagreement relating to the repair of a house which was near by, and that the plaintiff then informed Ira Brown that he had bought the Austin mortgage, (showing him the mortgage and assignment,) and then said to said Ira, " I hold these premises under the mortgage," meaning said mortgage to Austin. There was also evidence tending to prove that the horse and cow of said Ira Brown were pastured a portion of the summer of 1848, on the premises, and that in the winter of 1847 and 1848, said Ira Brown had cut some wood on the premises, and until the fall of 1848, had the possession of a part of the premises, though not of the *locus in quo.*

The acts complained of were committed on that portion of the premises designated on the plan as lying east of the dotted line drawn from the south west corner of Hiram Brown's land, south to the Murray land.

Pierce v. Brown.

The defendant insisted, and requested the court to charge the jury that the plaintiff had not shown such a title under said mortgage deed, as to entitle him to maintain this action. And also objected to the evidence on that point, because among other things, the assignment was not acknowledged before this suit was brought, and because it did not appear when the note was indorsed, nor what was the will of Appollos Austin, nor whether the executor had any authority to convey, and because the evidence did not show any repudiation of plaintiff's tenancy, or taking possession under the mortgage, as was requisite to maintain this action.

The defendant also requested the court to instruct the jury, that if they found that the parties had treated the *locus in quo*, lying east of the line aforesaid as not covered by the mortgage, or if that point was a matter in dispute between them, that a mere declaration that plaintiff held the premises under the mortgage, would not be such a change of the prior relation of landlord and tenant, as to give the plaintiff the right of action ; but in that case he was bound to indicate distinctly to the landlord that he claimed also, the disputed territory under it. There was no testimony tending to prove that any of the parties to this suit, or to the mortgage, had, previous to the fall of 1848, treated the *locus in quo* lying east of the line aforesaid, as not covered by the mortgage, or that that point was a matter in dispute between them.

The defendant also insisted, and requested the court to charge the jury, that the first line described in said mortgage deed extended no further east than the said south-west corner of Hiram Brown's land.

The court declined to charge as requested, any farther than is hereinafter stated, and admitted the mortgage, assignment, and note and indorsements thereon in evidence.

The court charged the jury that if the plaintiff, in the spring of 1848, purchased the mortgage and note, and took the assignment from the executors of Appollos Austin, and notified Ira Brown that he held the premises under the mortgage ; that the plaintiff would after that time, have the possession of the mortgaged premises against Ira Brown or his assignee, and is entitled to recover for such trespasses alledged in his declaration, proved to have been committed.

And further, that the north line of the mortgaged premises does

not necessarily terminate at Hiram Brown's south-west corner, but if the jury find that at the time of the execution of the mortgage deed in 1842, the premises claimed by the plaintiff, were then occupied and improved by Ira Brown as an entire farm, the disputed land in common with the rest, and not separated by any visible boundaries, and that the whole farm, including the nine acres of disputed land was bounded by the surrounding lands, as designated on the plan, and contained no more than about forty acres. The mortgage will cover the whole farm including the *locus in quo*. To which the defendant excepted.

*J. Prout* and *Kasson & Edmunds* for defendant.

1. The deed to Austin does not include the *locus in quo*. It is well settled that where there are well known obvious monuments, the mere addition of *quantity* will be wholly disregarded. *Gilman* v. *Smith*, 12 Vt. 150.

It is of no importance whether the farm was occupied as an *entire* farm. That hypothesis rests on a further presumption, that a man cannot mortgage a *part only* of his farm. As the plan was proved and admitted, it was a mere question of law where the boundaries were, and should not have been left to the jury.

2. The plaintiff had no title under the Austin mortgage, he could not maintain ejectment under it, and hence, could not have the *legal* right of possession. A mere equitable ownership of the mortgage will not justify the entry. Arch. Pl. 505. *Wild* v. *Cantillon*, 1 Johns. C. 123. *Jackson* v. *Myers*, 3 Johns. 388. *Jackson* v. *Pierce*, 2 Johns. 221. *Jackson* v. *Chase*, 2 Johns. 84. *Ives* v. *Ives*, 13 Johns. 235. *Suffern* v. *Townsend*, 9 Johns. 35. *Cooper* v. *Stower*, 9 Johns. 331.

1. The assignment to the plaintiff was not acknowledged, and his only interest was a chose in action.

2. The executor had no authority under the will, to convey the estate after condition broken.

3. The assignment does not purport to convey the title of the *testator*, but only the executor's *own interest*, and it does not appear he had any ; the appendage to his name, of " executor of A. Austin," is but *descriptio persona*. *Higley* v. *Smith*, 1 D. Chip. 409.

The defendant could have maintained ejectment against the plaintiff, at the time when, &c., and it is absurd to say that he is

liable to trespass. *Green* v. *Clark*, 3 Johns. 424. *Jackson* v. *Myers*, 3 Johns. 388.

3. There was no such repudiation of the plaintiff's tenancy, as to entitle him to maintain this action. The tenant must declare to his landlord distinctly, not only that he claims as mortgagee, but also, that he is no longer tenant; and also declare in *what right* he does claim. The mere declaration, that "he holds the premises under the mortgage," is insufficient to defeat the relation, especially when he at the same time shows his assignment which *is void*. This was only notice that he claimed under a void title, and was no notice. The repudiation should be distinct and unequivocal. *Greeno* v. *Munson*, 9 Vt. 37. *Hall* v. *Dewey*, 10 Vt. 593. *Hooper* v. *Willson*, 12 Vt. 695.

4. If the title of Austin did not vest in Pierce, then Pierce, even though he might claim under Austin, so as to justify a trespass by himself, yet it would be as Austin's *servant*. He could not maintain an action as such.

*E. N. Briggs* and *Barber & Bushnell* for plaintiff.

1. The trespasses complained of were committed in May, 1849.

In July, 1848, plaintiff was in possession, and had been previously under some kind of an agreement. Ira Brown the mortgagor, was shown the mortgage and assignment, and notified by plaintiff that he held possession under the Austin mortgage, by an assignment of the same. If plaintiff was in possession as tenant of the mortgagor, here was a sufficient repudiation of the tenancy, and an adverse claim under the mortgage. *Administrator of North* v. *Barnum et al.*, 10 Vt. 220. The jury under the charge of the court, have found that plaintiff took possession under the mortgage.

2. A tenant may protect his possession by purchasing in a mortgage, and hold under the mortgage, after condition broken, without the assent of the mortgagor. *Newel et al.* v. *Wright*, 3 Mass. 156.

3. The defendant, as grantee of Ira Brown, could have no farther title or right than Ira Brown had, the conveyance was 16th October, 1848, some time after plaintiff had possession under the mortgage, and after condition broken.

4. By our statute the mortgagor is entitled to possession until condition broken. After condition broken, the mortgagee is entitled to possession, and can take possession without any process. *Wilson* v. *Hooker et al.*, 13 Vt. 653.

The assignment of the mortgage transfers the mortgage debt, or is evidence that the debt was transferred at the same time. *Pitkin* v. *Leavitt*, 13 Vt. 379. 2 Swift's Dig. 170. *King* v. *Harrington*, 2 Aiken 33. *Stewart* v. *Thompson*, 3 Vt. 255.

A debt secured by mortgage, with the mortgaged premises shall be considered personal assets of deceased persons. Comp. Stat. of 1850, p. 344. Sec. 29 and 30.

The question is virtually decided in Massachusetts under a similar statute. *Cutter* v. *Davenport*, 1 Pick. 86.

As to the question whether the *locus in quo* was conveyed by the description in the mortgage, the court in their charge to the jury, followed the instruction of the Supreme Court in this case as given at the last term.

The opinion of the court was delivered by

Isham, J. In this action of trespass on the freehold, the plaintiff seeks to recover damages for trespasses committed during the season of 1849. For the purpose of showing his title to the premises in question, the plaintiff, on the trial, offered in evidence a mortgage deed executed by Ira Brown to Appollos Austin, dated May 2, 1842, with an assignment of the mortgage and transfer of the note to him, made by G. A. Austin as executor of Appollos Austin on the 17th day of April, 1848. The assignment was recorded May 22, 1848, but not acknowledged until May 21, 1851.

At common law, as between the mortgagor and mortgagee the legal estate as well as the right of possession, is in the mortgagee, whether before or after condition broken. And under the provisions of our statute, p. 286, Sec. 12, it has uniformly been considered that the estate and right of possession are given to the mortgagee, after condition broken, and that he may then sustain his action of ejectment against the mortgagor or his grantees even without notice to quit. *Atkinson* v. *Burt*, 1 Aik. Rep. 329. *Lyman* v. *Mower et al.*, 6 Vt. 345. So that the legal interest and right of possession to these premises were in the estate of Appollos Austin at the time of the assignment of this mortgage to the plaintiff. *Wilson* v. *Hooper*, 13 Vt. R. 653. And it is equally true, that on the death of a mortgagee before foreclosure, his right and interest in the mortgaged premises vest in his executor and administrator, to be administered as assets belonging to the estate.

But it is insisted that the plaintiff has no right to these premises, and that the assignment of this mortgage, for various reasons, is ineffectual to convey to him that right of property or possession that will enable him to sustain this action. It is to be observed that this is purely a question between the estate of Appollos Austin and the plaintiff as assignee, and that whatever would be sufficient to estop the executor from claiming the title and possession as against his assignee, will be sufficient as against the mortgagor, and all claiming under him.

The Comp. Stat. p. 384, Sec. 7, provides that no conveyance shall be good and effectual in law against any other person but the grantor and his heirs only, unless the instrument be acknowledged and recorded; as against the *grantor* and *his heirs* the instrument is effectual to convey the legal title, though neither acknowledged or recorded. The assignment in this case as between the parties to the instrument, contains all the necessary requisites of an operative conveyance. It has the usual operative words, was signed, sealed and witnessed, and will estop the executor and the estate from claiming the premises assigned as against the assignee.

It should be acknowledged, as a preliminary step before recording, and as that supersedes the necessity of proving its execution, when produced in court, it is immaterial when it is made, if done when it is offered in evidence. 13 Vt. R. 379, *Pitkin* v. *Leavitt.* The same principle applies to the recording of a deed, or other conveyance. For when such an instrument is recorded at any time after its date, it becomes effectual from its date; *Douglass* v. *Spooner*, N. Chip. 74, and it may be read in evidence, if recorded at any time before trial. 6 Vt. R. 532, *Harrington* v. *Gage.* The assignment, therefore, was properly read in evidence, so far as objections were taken to its acknowledgment. Equally unavailable is the objection, that the executor had no authority to make this assignment without license from the probate court. This objection proceeds upon the ground, that after condition broken, the property becomes real assets, and to be administered as real estate of which the testator died seized. But the Comp. Stat. p. 344, Sec. 29, provides that the debt and mortgaged premises belonging to a deceased person as mortgagee, when not foreclosed in his life time, shall be considered as personal estate in the hands of the executor, and is to be administered and accounted for as such. Un-

der this statute the debt and premises mortgaged are as much under the control and disposition of the executor as any article of personal estate that comes into his possession.  He may discharge, release and transfer the same under the powers derived from his letter of administration.

The objection also, that this assignment purports to convey on the part of the assignor " *all his right, title and interest*" to the premises, and not *his right, title and interest as executor*, must be considered as falling within the principle, and overruled by the case of *Stewart* v. *Thompson*, 3 Vt. R. 255.  It was there held in the assignment of a mortgage, that the intention of the parties as manifested by the whole instrument, is to govern in its construction.   This assignment *in its premises describes the assignor as executor* of Appollos Austin and in *that capacity* the instrument is signed and sealed.  When the instrument is signed in his capacity as executor, it is an assignment of his right, title and interest which he has in that capacity, as much so, as if it was so written in the body of the assignment, and equally manifests such to be his intention.  And when *these instruments* are to be carried into effect, according to the evident intention of the parties, we cannot hesitate to say, that this assignment is sufficient to transfer to this plaintiff all the interest and right which was vested in the estate of Appollos Austin, and for that purpose, was sufficient to permit it to be read in evidence as against the defendant.

It is further claimed, that this action cannot be sustained, as the plaintiff was not in possession of the premises under the mortgage at the time of the trespasses complained of, but on the contrary, was in possession as tenant, of Ira Brown the mortgagor.  We learn from the case, that the plaintiff went into possession of the premises described in the mortgage deed in the spring of 1847, under some arrangement with Brown, and that he continued in such possession until July or August, 1848.  At this time the plaintiff informed Ira Brown that he had bought the Austin mortgage, and distinctly informed him that he held the premises under the mortgage, and at the same time showing him the mortgage deed and assignment.

It is unquestionably true that a tenant cannot deny the title of his landlord, nor set up an outstanding or paramount title in himself or a third person.  2 Smith's Lead. Cas. 570.  At common

law this rule did not exist, except in cases where the lease was by deed indented, where the estoppel arose by indenture, and not from the tenancy. Lit. § 58 Co. Litt. 47–6. But since the time of Lord Holt, the rule has been established which precludes the tenant, in all cases where that relation exists, from denying the landlord's title. Yet the estoppel is equitable and not legal. 2 Smith's Lead. Cas. 569, 570.

But whatever may be its character " it only debars him from " contesting the validity of the title *at the time* when the *lease was* "*made* and *possession given*, and not from showing that the right " which the landlord then had was defeasible or limited in its na- "ture and has since expired or been defeated." This rule is given by Lord Denman in *Doe* v. *Barton*, 11 Adol. & Ellis 307. *Knight* v. *Smythe*, 4 M. & Lel. 347. 2 Smith's Lead. Cas. 570. *Jackson* v. *Rowland*, 6 Wend. 666. And this princi- ple has been applied to cases very similar to this in facts. 15 Pick. Rep. 147, *Smith* v. *Shepherd*. 1 Met. Rep. 494, *Welch* v. *Adams*. 9 Bing. Rep. 613, *Hapcraft* v. *Keyes*. 3 Mass. Rep. 156, *Newel* v. *Wright*.

In this State it has been held, " that a tenant may repudiate his " tenancy and set up an adverse claim in his own right, if this is "made known to the landlord," *North* v. *Barnum*, 10 Vt. R. 223, " and when the tenant notifies his landlord that he shall no longer " hold under him, the relation ceases. The possession has become " adverse, and the statute of limitations begins to run." 9 Vt. R. 37, *Greeno* v. *Munson*. And under the decisions in England and in this State, we have no doubt that if the plaintiff first entered into possession of these premises under the mortgagor, as his ten- ant, still he might repudiate that tenancy by purchasing the Aus- tin mortgage as being an older and better title, and protect him- self in his possession of the premises, from any claims of his for- mer landlord. And whenever by purchasing such title he is en- titled to the right of possession, it would be an idle ceremony to require the tenant to surrender up his possession, and then resort to his action of ejectment, when its only effect can be, to put the plaintiff in the same situation he now occupies. We apprehend this is not required by the law, and Lord DENMAN, C. J., in *Doe* v. *Barton*, observes, "that it seems absurd to require him to go "through the form of an ejectment in order to put them into the

"very position in which they now stand." When, therefore, the plaintiff exhibited to Ira Brown, in the summer of 1848, the mortgage deed and the assignment of the same to him and informed him of his ownership, and notified him that he held the premises under that mortgage, it was a repudiation of the tenancy and a dissolution of that relation, and his possession thereafter was adverse. Chitty on Cont. 341. 1 Moo. & Pag. 480. And there was no necessity of surrendering the possession to the mortgagor, and then bringing his action of ejectment, for it could only place him in the same situation in which he then was. The court therefore very properly charged the jury, that upon those facts the plaintiff had such title and possession as would enable him to sustain this action.

The premises on which these trespasses were committed were conveyed by Ira Brown to the defendant on the 16th of October, 1848, and are situated east of the dotted line on the plan which is made part of the case.

The important question arising in this case is, whether in point of fact, the mortgage deed given to Austin and assigned to the plaintiff, includes the tract of land on which the trespasses were committed, and which was conveyed to the defendant. This is a question of law and depends upon the construction which should be given to the deed. The premises are described by references to the *lines* and *lands* of adjacent proprietors. No other monuments are referred to, and courses and distances are not otherwise given. And if we were to be governed entirely by the land of adjacent owners, the calls of the deed can be answered, and the land be included or excluded, on an equally reasonable construction of the deed. For if the first or north line in the description commencing in the north-east corner of Fuller Brown's land, thence running east on Pendleton's south line to Hiram Brown's land, terminates at the south-west corner of Brown's land at the dotted line, the premises would not be included in the mortgage. But if the line is continued past that corner until it strikes Brown's land lying east of this lot, then the premises are included in the deed. The quantity of land which the parties intended to mortgage was a lot containing about forty acres, as expressed in the deed, and this statement is verified only by including the land in the mortgage. This circumstance with the absence of all pos-

sible motive not to include it with the remainder of the lot, has induced us to consider it as covered by the mortgage, as this construction answers all the calls of the deed, and manifestly carries into effect the intention of the parties. The premises therefore being included in the deed, and the plaintiff having this title and possession at the time of committing the trespasses for which the action is brought, we see no reason for disturbing the verdict in the case.

The judgment must be affirmed.