STEPHEN F. TEFFT *vs.* ABIGAIL U. REYNOLDS *et al.*

JUNE 9, 1921.

PRESENT: Sweetland, C. J., Vincent, Stearns, and Sweeney, JJ.

(1)  *Easements. Private Ways.*

Where it was provided in an agreement for a right of way in favor of B. and C. over the land of D. that "whenever a road shall be laid out through the land of D. in any other way than the above mentioned driftway, that then the ways above mentioned shall cease," and thereafter a public highway was laid out through the land of D., thereupon the private ways for the use of B. and C. ceased by the express terms of the agreement.

(2)  *Easements. Limitation of Right.*

Where parties have manifested an intention to limit the duration of a right of passage, it is the duty of the court to enforce that limitation and not give a perpetual right where only a determinable one was intended.

(*3*)   *Easements.   Deeds.   Recitals.*

In an action for obstruction of a right of way, recitals in the deed to the plaintiff and from and to his ancestors in title, cannot be set up by way of estoppel against the defendants, where they were strangers to all of said deeds and were not privies to any of the parties thereto.

(*4*)   *Easements.*

Where one enters into possession of land under license from the owner, the law presumes that the occupation having been at first not adverse that it continues to be of the same nature in the absence of some conduct indicating a change.

(*5*)   *Easements.   Evidence.*

Evidence to establish an easement must be clear.   If the proof is left in doubt the party asserting the easement must fail.

(*6*)   *Exceptions.   New Trial.*

An exception to a denial of a motion to direct a verdict is rendered untenable by the subsequent granting of a motion for a new trial in favor of the excepting party, upon the ground that the verdict was against the evidence.

TRESPASS ON THE CASE.   Heard on exception of plaintiff and overruled.

SWEENEY, J.   This is an action of trespass on the case for obstructing a right of way.   Two trials of the case have been had in the Superior Court and at each trial the jury returned a verdict for the plaintiff.   The first verdict was set aside by the trial justice on the defendants' motion for a new trial and no exception was taken by the plaintiff.   The verdict rendered at the second trial was set aside upon a similar motion upon the ground that the verdict was not sustained by the evidence, and the plaintiff took exception to such action and duly brought the case to this court, claiming that the action of the trial justice in granting the second motion for a new trial was erroneous.

The declaration has three counts and in each of them the plaintiff avers that he is the owner of a farm situate in North Kingstown; that he has a right of way from said farm over the land of the defendants, known as land of heirs of Alfred Reynolds, to the highway known as the Shore road to be used by him at all times and for all purposes; and that on the 1st day of January, 1910, the defendants obstructed said

way by locking a gate across it and thereby preventing him from using and enjoying it. In the first and second counts the plaintiff claims the right of way by grant and in the third count he claims the right of way by prescription.

The plea of the defendants is the general issue.

It appears in evidence that in 1843 William Brown owned the plaintiff's land and Joseph Reynolds owned the defendants' land. These gentlemen, and several other land owners, wished to get a road from their lands northerly to the present village of Wickford. Upon their petition, June 28, 1843, the General Assembly passed a resolution authorizing them to build and construct a bridge across the cove to be connected with a road to facilitate communication between Wickford and Boston Neck. Soon after the passage of this resolution, these gentlemen, "for the benefit of the lands of the subscribers," signed an agreement by which they agreed to pay certain sums of money for the building of said bridge, "and also agreed that a suitable driftway shall be laid out through the land of Joseph Reynolds from said bridge to the northeast corner of the land of William Brown . . . for the accommodation of John Pitman (1) and William Brown and whoever may afterwards own the land by them owned, which said driftway shall be made and kept in repair by Joseph Reynolds, John Pitman, and William Brown or whoever may own said lands." It was also provided in said agreement, "And it is further agreed that whenever a road shall be laid out, made and fenced from said Bridge through the land of said Reynolds in any other way than the above-mentioned driftway, that then and in that case the ways above-mentioned for the use of said Pitman and Brown shall cease."

This agreement is not dated but it was recorded at the town clerk's office in North Kingstown, April 26, 1845.

Joseph Reynolds died before the recording of said agreement to build said bridge and his will, dated July 15, 1833, was admitted to probate, January 8, 1844, and by it he gave his real estate to his widow and his three sons.

In April, 1853, deeds were executed by a number of land owners, including the devisees of said Joseph Reynolds, conveying land to the town for a highway known as the Hamilton road, and in March and May, 1853, the town council of said North Kingstown passed votes ordering said Hamilton road to be laid out.

By a deed recorded May 28, 1853, William Brown and John Pitman, together with said devisees of said Joseph Reynolds, as owners and proprietors of the bridge and abutments, conveyed all of their several rights and interest in and to said bridge and abutments to the town of North Kingstown for the purpose of aiding in the construction of said road.

Upon the laying out of this public road (Hamilton road) through the Reynolds land, the private ways for the use of Brown and Pitman ceased by the express terms of said agreement.

Brown's land was bounded southerly on an ancient highway known as the Annaquatucket road and he had no way of necessity over the Reynolds land.

The plaintiff claims title to the way by grant. The basis of this claim is the agreement above referred to. The plaintiff is not entitled to a way by grant as in said agreement it is expressly stated that the right of Brown and Pitman to use the way shall cease when a road shall be laid out through the land of Reynolds; and the record evidence proves that the new road (Hamilton road) was laid out in 1853.

"Where the parties have fully manifested an intention to limit the duration of a right of passage it is the duty of the courts to enforce that limitation and not to disregard it by giving a perpetual right where only a determinable one was intended." 19 C. J. 969, § 205.

The plaintiff has introduced in evidence several deeds to prove his title to the land formerly owned by Brown. In the deed from Brown to Jeremiah S. Gardner, dated April 7, 1863, it is stated in the *habendum* clause, "with the right

of way which I have through the land now belonging to the heirs of Joseph Reynolds, deceased." Mr. Gardner owned the land until June 25, 1881, when he deeded it to Joseph G. Hayward, and Mr. Hayward deeded it to Timothy Carroll, December 27, 1882. No mention is made of the right of way in these two deeds, but when Mr. Carroll conveyed the land to Joseph P. Earle, July 10, 1886, he stated in his deed, "the above described premises being entitled to a right of way through land of said heirs of Alfred J. Reynolds, deceased, to the public highway as by deed from William Brown to Jeremiah S. Gardner, dated April 7, 1863." Joseph P. Earle deeded the property to Mary T. Earle, June 29, 1888, without mentioning the right of way but when she conveyed the property to the plaintiff, Tefft, February 18, 1908, she referred to the right of way, using the same language as contained in the deed of Carroll to Joseph P. Earle.

The recitals in the deed to the plaintiff, or the deeds from and to his ancestors in title, cannot be set up by way of estoppel against the defendants because they were strangers (3) to all of said deeds and were not privies to any of the parties thereto. *Faulkner* v. *Rocket*, 33 R. I. 152.

The plaintiff also claims a right of way by prescription, and the question arises, Does the evidence prove that the plaintiff, and his ancestors in title, acquired a right of way by prescription over the Reynolds land?

When a party enters into possession of land under permission or license from the owner, the presumption is that his possession is in subordination to the true owner in the absence of acts amounting to a disseizin. 2 C. J. 265, § 589. (4) The law presumes that the character of the occupation having been at first not adverse, continues to be of the same nature in the absence of some conduct indicating a change. *Flagg* v. *Phillips*, 201 Mass. 216.

It is the well settled rule that use by expressed or implied permission or license, no matter how long continued, cannot ripen into an easement by prescription, since one of the

elements essential to the acquisition of the easement, namely, user as of right, as distinguished from permissive use, is lacking. Note to *Holm* v. *Davis*, 44 L. R. A. (N. S.) 89. This rule is supported by a long line of cases cited in the note.

(5) The evidence to establish or show the existence of an easement must be clear and satisfactory. If the proof of an easement is left in doubt the party asserting the easement must fail. 19 C. J. 963, § 194.

After the laying out of Hamilton road in 1853, the use of the way by Brown and his successors in title became so infrequent that the testimony shows that its use ceased altogether in 1886 when Joseph P. Earle became the owner of the Brown land, and the right to use the way was not claimed again until after the plaintiff became the owner of the Brown land in 1908—a lapse of twenty-two years.

In this case the origin of the easement is known and we are not to presume a lost grant. When, if ever, was the permissive use of the way under the grant converted into a use which was adverse and under a claim of right, and what notice did the owners of the Reynolds land have of such a conversion? A careful reading of the testimony fails to show that the owners of the Reynolds land knew, or had any reason to know, that Brown or his successors in title ever claimed a right to use said way adversely and as of right. The relations between Brown and his grantee, Gardner, and the Reynolds heirs were friendly, and there is no testimony to show that the use of the way by Brown or Gardner or their successors in title was adverse or under a claim of right.

(6) At the conclusion of the testimony, the defendants' attorneys made a motion to direct a verdict which was denied by the trial justice and exception was noted. This exception was rendered untenable by the subsequent granting of the defendants' motion for a new trial upon the ground that the verdict was against the evidence. *Barstow* v. *Turner*, 29 R. I. 100; *Malafronte* v. *Milone*, 33 R. I. 460.

Upon the evidence in the case the trial justice should have granted the defendants' motion to direct a verdict because there was no sufficient legal evidence to require the case to be submitted to the jury, and for the same reason he did not err in granting the defendants' motion for a new trial upon the ground that the verdict was not supported by the evidence.

The plaintiff's exception is overruled and the case is remitted to the Superior Court for a new trial.

*Benjamin W. Grim,* for plaintiff.

*Lyman & McDonnell, Thomas F. I. McDonnell, Richard E. Lyman,* for defendants.