## In re Estate of Nathan Smilie

[373 A.2d 540]

No. 143-76

Present:  Barney, C.J., Larrow, Billings, and Hill, JJ., and Shangraw, C.J. (Ret.), Specially Assigned

Opinion Filed April 5, 1977

*Guy M. Page* and *Yandell, Archer & Foley*, Burlington, for Plaintiff.

*Sargent & White*, Morristown, for Defendant.

**Larrow, J.** Appellant Arthur J. Langdell brought his petition to the Lamoille Probate Court, under 14 V.S.A. § 1801 et seq., claiming that the Nathan Smilie Farm, so-called, in Cambridge, Vermont, was not a part of the Nathan Smilie Estate, and seeking appointment of an administrator to convey the property to him. That court ruled against him, holding he had gained no interest in the Smilie Farm by adverse possession, and that title to the farm had, after several life estates, reverted to the Nathan Smilie Estate. He thereupon appealed to Lamoille Superior Court, which reached similar conclusions. This appeal then resulted.

The judgment order which was entered below is essentially in two parts. The first negates record title, and title by adverse possession, in the appellant Langdell. The second part declares the present and past state of the title, under the will of Nathan Smilie, concluding that it had reverted to his heirs in 1931, upon the death of the last life tenant without issue to take the remainder under that will. Appellant here attacks both conclusions, the second upon the ground he has either full ownership under the will of a later devisee, or one-quarter ownership under that same will, depending upon application of our then statutes relating to the rule against perpetuities and to fees tail.

We do not feel that under our established rules we are called upon to dispose of the appellant's contentions relating to the present state of the title in question. It is true that the trial court made able and extensive findings on this issue, and carefully outlined its legal conclusions forming the basis for its result. But it did so only after making a preliminary finding that the only issue before the court, by agreement of the parties, was "to decide whether or not the Appellant, Arthur Langdell, had acquired title to the real estate of the Estate of Nathan Smilie by adverse possession." The parties admit this agreement below, and, albeit reluctantly, also admitted on oral argument that the present state of record title was not litigated before the trial court, and is

not properly before this Court on appeal. As in *Fenix* v. *Contos*, 126 Vt. 477, 236 A.2d 668 (1967), the record does not indicate any enlargement of the original issue, adverse possession, by the parties, and our entry order will strike, without prejudice, so much of the judgment order below as relates to other issues.

Stripped of those other issues and the rather unusual complexities of the Nathan Smilie will, the remaining issue for review requires a less detailed factual statement. Nathan Smilie died testate in 1862, leaving his Cambridge farm with successive life estates and a remainder in tail. His son Henry, a life tenant, used and occupied the farm until his death in 1893. Henry's son Levi, also a life tenant, then occupied the farm until about ten years prior to his death in 1926. Levi died without issue, an event for which the will set up a devise of the farm to his oldest surviving brother, and on his death, to the issue of that oldest surviving brother. This oldest surviving brother was George Smilie, who died testate in 1931, without issue, but leaving a sister and two brothers. By his will, he purported to leave the farm to appellant Langdell. The will was probated, but the farm was never decreed to Langdell or treated as an asset of the estate.

The appellant came onto the farm in 1910. From 1910 to 1919 he worked for Levi Smilie, helping him run the farm and living there. From 1919 to 1926 he worked elsewhere. In 1926 Levi died, leaving George Smilie as his oldest surviving brother. George and William, his brother then living on the farm with him, contacted Langdell about running the farm. He accepted, and moved on in December, 1926, purchasing the personal property in the house and the farm equipment. He is still on the farm. William moved off the farm, but George, then blind, stayed on until his death.

Once or twice thereafter William Smilie offered to sell his interest to Langdell for $5000. This was never accepted, although appellant consulted two well known attorneys. In his words: "They told me to stay there and shut my mouth." The trial court concluded that he followed this advice to the letter, and quite evidently relied heavily on this fact as basis for its inability to find appellant made any claim of right or title prior to bringing suit, and its positive finding that his occupancy was as a tenant, with permission and acquiescence.

Langdell had no prior notice of the devise to him in George Smilie's will. After George's death, the farm was listed for tax purposes to his estate, and billed to the estate c/o Arthur

Langdell. Langdell has attempted, unsuccessfully, to have the tax listing changed to his name. Since 1931 he has, until recent retirement, lived on and operated the farm. He now lets his son use some of it. No one has asked him to leave. Except for 1926, he has paid all real estate taxes and insurance, sold some gravel to the Town of Cambridge, cut some timber to use for building repairs, and some fence posts for use on the farm. From 1926 to 1931, tax bills came to George Smilie. He requested that Langdell pay them, and this was done, even after George's death. There is no evidence in the case of any sharing of expenses or income, if any, between Langdell and the Smilie family members.

The extremely unusual factual situation in this case, coupling complexities of title with friendship between the parties and legal advice against positive action makes it correspondingly difficult to evaluate the claim of adverse possession here under legal concepts which would fit common circumstances more precisely. It is perhaps the root of the whole question that the appellant followed the advice of his attorneys, completely, when it was sound only in part. Certainly the advice to "stay there" defines an essential element of adverse possession. But the warning to "shut my mouth" is not as sagacious where the original entry on the disputed premises was by permission. As appellees point out, and the trial court recognized, a tenant may repudiate his tenancy and set up a claim of title in his own right, if this claim is made known to the landlord. *North's Adm.* v. *Barnum*, 10 Vt. 220 (1838). A continued policy of silence is not, as the court concluded, an effective repudiation of the terms of the original entry. Appellant's citation of *Pierce* v. *Brown*, 24 Vt. 165 (1852) is inappropriate because in that case the tenant purchased an outstanding mortgage, and notified the landlord that he was thereafter holding under it. We have consistently held that where an original use, or possession, is by virtue of permission, it does not become adverse until there is a repudiation or disclaimer, either made known expressly to the owner or clearly indicated by unequivocal actions. *Price* v. *Rowell*, 121 Vt. 393, 398, 159 A.2d 622 (1960); *Fuller* v. *Watkins*, 117 Vt. 257, 261, 90 A.2d 444 (1952). We conclude that on the facts shown the appellant's occupancy here was similar to that of the surviving husband in *In re Fisher's Estate*, 104 Vt. 37, 40, 156 A. 878 (1931), held to be "under an arrangement with the children . . . not adverse, but permissive, and would not ripen into title however long continued."

Appellant would seek to take the case out from under this general rule, claiming that after the will in his favor the character of his occupancy changed, that he was then holding under a "perpetual gift," and that this change was open and apparent to anyone claiming under the Smilie Chain. He says that, on the facts found, the court's inability to find a claim of right or title brought to the attention of the Smilies cannot stand. We disagree.

Several facts militate against appellant's conclusion. No express notice of his contention is claimed. A deliberate policy of silence is admitted. No change whatever in day-to-day operations occurred. While the will in question was probated, no further effort to secure a decree in appellant's favor appears to have been made. (Nor, parenthetically, to pay any inheritance tax on the claimed devise.) When Henry Smilie, then one of the heirs, offered to quitclaim his interest to appellant Langdell between 1936 and 1940 for a reasonable price, no claim of title in himself appears to have been made by Langdell. The only two actions found to have been taken by appellant inconsistent with a permitted tenancy were a sale of gravel to the Town, and attempts to have the tax listing changed to his name. Neither of these are found to have been brought to the attention of the Smilies. The first was an isolated instance, rather than a course of conduct. And, as to the second, it is noteworthy that appellant continued to pay the taxes, however listed, as he had originally been requested to do. Langdell's possession was indeed open and notorious; it is undisputed. It is his claim of right or title prior to suit that is untenable. Whatever his personal beliefs, they were kept to himself as a matter of admitted policy. His flag was not, in the classic phrase, "unfurled."

The trial court's general conclusion that appellant entered under permission and stayed on with permission and acquiescence, and of inability to find activities brought to the notice of the Smilies as being under a claim of right or title, we think are fully supported by the evidence. So much of the judgment order as repudiates appellant's claim of title by adverse possession must be affirmed.

*Paragraphs 1, 2, and 4 of the judgment order of the Lamoille Superior Court are affirmed. Paragraph 3 thereof is stricken, without prejudice.*