386 A.2d 1117.

EMMA MARTINEAU *et al. v.* FRANK KING *et al.*

JUNE 6, 1978.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

JOSLIN, J. This action of trespass and ejectment was commenced in December 1969 in the Sixth Division District Court and then by agreement was removed to the Superior Court. There it was tried on the plaintiffs' claim for possession of a 20-to-22 acre tract of land in Smithfield and on the defendants' defense and counterclaim that they themselves had acquired legal title to that tract by adverse possession and that their possession of it was therefore rightful. The plaintiffs are the heirs-at-law of Nora Bessette, alias Nora King, who died intestate in 1946, holding record title to the real estate in question. Named as defendants were Frank King, who was then in possession of the real estate,[1] and F. Monroe Allen, in his capacity as executor under the will of Fred King, deceased. The case was tried before a trial justice sitting without a jury and, following judgment for the plaintiffs on their complaint and on the counterclaim, the defendants appealed.

The facts cover a span of more than 40 years. The last recorded transfer of the real estate was to Nora King under a deed that was dated 1936 but was not recorded until 1938.

---

[1] The death of defendant Frank W. King on February 22, 1974 was suggested on the record and F. Monroe Allen, in his capacity as executor under Frank's will, was substituted as a party defendant in his place.

Apparently the purchase price for the conveyance was paid by Charles King and perhaps also by his brother, Fred, but no claim is made that Nora held, or that plaintiffs hold, as trustee for them. In any event, Nora, Charles and Fred, and later a third King brother, Frank, moved into a dwelling constructed by Charles and Fred on the premises and they resided there until Nora's death in 1946. During this period Charles and Nora, although not married, were believed by many in the community to be husband and wife.

Following Nora's death, Charles and Fred continued to live in the residence until they died in 1959 and 1968, respectively. Frank, who had been living in another residence that he had constructed on the premises in about 1951, moved to Florida after Fred's decease. He later returned to this state and stayed in Woonsocket, where he died in 1974 without ever returning to the Smithfield property.

The plaintiffs have never occupied the premises and indeed were unaware of their interest in it until 1968, when Fred's attorney attempted to obtain from them a quit-claim deed of that interest. Although that attempt was unsuccessful, it appears to have provoked this litigation.

The only issue is whether defendant, in his dual capacity as executor under the wills of two of the brothers, holds good title to the real estate in question and that issue depends in turn upon whether the brothers acquired title by adverse possession pursuant to the requirements of G.L. 1956 (1970 Reenactment) §34-7-1, which provides as follows:

> "Where any person or persons, or others from whom he or they derive their title, either by themselves, tenants or lessees, shall have been for the space of ten (10) years in the uninterrupted, quiet, peaceful and actual seisin and possession of any lands, tenements or hereditaments for and during the said time, claiming the same as his, her or their proper, sole and rightful estate in fee simple, such actual seisin and possession shall be

allowed to give and make a good and rightful title to such person or persons, their heirs and assigns forever; and any plaintiff suing for the recovery of any such lands may rely upon such possession as conclusive title thereto, and this chapter being pleaded in bar to any action that shall be brought for such lands, tenements or hereditaments, and such actual seisin and possession being duly proved, shall be allowed to be good, valid and effectual in law for barring such action."

Essentially, the elements of adverse possession under this provision, as at common law, are that the "possession * * * must be actual, open, notorious, hostile, under claim of rights, continuous, and exclusive" throughout a 10-year period. *Sherman* v. *Goloskie,* 95 R.I. 457, 465, 188 A.2d 79, 83 (1963).

In adverse possession cases strict proof is the rule. Specifically, to establish a claim "requires proof by a preponderance of the clear and positive evidence or, as was stated otherwise by us in *Finocchiaro* v. *Francescone,* 97 R.I. 371, 373, 198 A.2d 37, 38, ' * * * by evidence that is unambiguous and affirmative in its character.' " *Chace* v. *Anarumo,* 104 R.I. 48, 51, 241 A.2d 628, 629 (1968).

On appeal defendant contends that he has established by the required quantum of proof that Charles King's occupation of the property in question subsequent to Nora's death was adverse within the meaning of §34-7-1 and that Frank and Fred King's combined possession was also adverse and continued for a sufficient period of time to permit acquisition of title under that statute.

Those contentions, however, completely ignore the trial justice's findings that the three King brothers entered the premises peacefully under Nora's title, that they resided there amicably with Nora until her death in 1946, and that their occupancy during that period was permissive rather than adverse in nature.

Those findings are entitled to great weight and will not be disturbed by this court unless clearly wrong or based upon an oversight or misconception of material evidence, *De Bartolo v. Di Battista*, 117 R.I. 349, 352-53, 367 A.2d 701, 703 (1976); *Rehab v. Lemenski*, 115 R.I. 576, 579, 350 A.2d 397, 399 (1976). The defendant has not provided us with any reason for rejecting the trial justice's finding that the King brothers' original occupancy of the property was permissive. That finding, therefore, becomes an established fact and, as such, the predicate for the presumption that the Kings' initial permissive use "continue[d] to be of the same nature in the absence of some conduct indicating a change." *Spangler* v. *Schaus*, 106 R.I. 795, 804-05, 264 A.2d 161, 166 (1970); *accord, Daniels v. Blake*, 81 R.I. 103, 110, 99 A.2d 7, 11 (1953); *Tefft v. Reynolds*, 43 R.I. 538, 542, 113 A. 787, 789 (1921); 3 *American Law of Property* §15.4 at 773 (1952); 7 Powell, *The Law of Real Property* ¶1015 at 728-32 (1977).

To rebut that presumption demands a showing of some affirmative action constituting notice that the claimants' occupancy was hostile to the title of the true owner and that they were claiming title as their own. *See Spangler* v. *Schaus*, 106 R.I. at 805, 264 A.2d at 166. Initially, defendant argues that the requisite affirmative action can be found in the brothers' exclusive and undisturbed possession of the property from Nora's death in 1946 until this action was commenced in December 1969 and in their payment of the taxes assessed against the property during those years. Mere occupancy and payment of taxes, however, unaccompanied by "a repudiation or disclaimer, either made known expressly to the owner or clearly indicated by unequivocal action," will not convert possession, originally permissive in nature, into a claim of right that will ripen into an acquisition of title by adverse possession. *In re Estate of Smilie*, 135 Vt. 217, 220, 373 A.2d 540, 543 (1977); *accord, Andreotti* v. *Andreotti*, 224 Cal. App. 2d 533, 541, 36 Cal. Rptr. 709, 714 (1964); *but see Tenney v. Luplow*, 103 Ariz. 363, 442 P.2d 107 (1968). There was no such disclaimer, repudiation or express notice of the hostile claim in this case.

The defendant argues, however, that Frank's construction of a second dwelling on the property in 1951 and his occupation of that dwelling until he moved to Florida in January of 1968 or 1969 clearly indicated a change that converted an antecedent permissive use into a hostile occupation under a claim of right. The argument that the construction and occupation of the second dwelling rebutted the presumption of a continuing permissive use draws some support from *Tiffany v. Babcock*, 51 R.I. 350, 154 A. 784 (1931), but even if completely acceptable would not warrant a finding of acquisition of title by adverse possession unless the occupancy thereunder continued uninterruptedly for 10 years. Frank's testimony, although unclear about whether Nora or Charles was the original owner of the property, is clear on the the point that he himself made no claim to ownership during Charles' lifetime. Thus, the period of his adverse possession could not have commenced prior to November 1, 1959, the date of Charles' death, and he could not have acquired title by adverse possession since less than 10 years intervened between that date and January of either 1968 or 1969, when he moved to Florida, leaving the premises unoccupied.

The defendants' appeal is denied and dismissed, the judgment appealed from is affirmed and the case is remanded to the Superior Court.

*Albert O. Watt,* for plaintiffs.

*F. Monroe Allen,* for defendants.