DECISION
Plaintiffs request an injunction prohibiting Defendant from interfering with the Plaintiffs' use of a certain right of way. As a preliminary matter, the Court is asked to and must determine whether an easement by prescription or by implication exists in favor of the Plaintiffs.
FACTS/TRAVEL
On January 27, 1971, Yvonne C. Serpa conveyed to Robert Serpa ("Serpa") land then delineated as Lot 12 (twelve) situated on the northerly side of Kickemuit Avenue and bounding southerly on said avenue in the town of Bristol, Rhode Island. The following year, Serpa sought and on July 27, 1992 received approval of a subdivision plan, entitled Rodase Villa, effectively dividing Lot 12 into six lots: 9, 19, 20, 21, 22, and 23.
Significantly, lots 19, 20, and 9 all possess frontage on Kickemuit Avenue. Lots 19 and 20 respectively possess one hundred and twenty (120) feet of frontage. Lot 9, via a rectangular strip of land running from the major portion of Lot 9 in between bordering Lots 19 and 20 and projecting ultimately to Kickemuit Avenue, effectively possesses approximately thirty (30) feet of frontage on Kickemuit Avenue. Said rectangular strip is clearly marked "Private R.O.W. PORTION OF LOT #9" on the subdivision map. (Plaintiffs' Exhibit 1)
With respect to Rodase Villa, there is in evidence an affidavit from Manuel Prenda, former Bristol Planning Board chairman, stating that said subdivision was approved by the Bristol Planning Board in 1972, for the reasons that the right of way was to service lots 9, 19, and 20 for egress; that said single driveway and/or right of way would eliminate the need for three, separate driveways; and further that Serpa represented to the board that said right of way was to be used in common as a driveway for lots 9, 19, and 20. This Court has not been provided with an official record of the planning board proceedings or of their decision.
In 1979, the Plaintiff Kotubys ("Kotubys" or "Plaintiff") leased the premises on Lot #9, and in 1981, they bought Lot 19. The Kotubys aver that Serpa specifically told them that the right of way was for use by Lots 9, 19, and 20 (Kotuby Affidavit, Exhibit E), and the Kotubys relied on said representations in positioning their home on the lot. The deed from Serpa to Kotuby neither refers to Rodase Villa nor expressly grants an easement over Lot 9 for ingress and egress to Kickemuit Avenue. From the time of their purchase until a Notice of Interruption of Adverse Possession was recorded by the Robbins, owners of lot 9, declaring themselves the owners of the subject right of way and contesting any claims of rights to said right of way from the owners of Lots 19 and 20, the Kotubys have used the right of way for access to Kickemuit Avenue from their property.
On December 19, 1984, the Plaintiff Whittys ("Whittys" or "Plaintiff") bought Lot 20 from Serpa. Unlike the Kotuby deed, the Whitty deed refers to the private right of way as a border to the Whitty property and also references the subdivision plan. The Whitty deed in pertinent part reads that Lot 20 is
 ". . . bounded and described as follows:
 Westerly By a "Private Row-Portion of Lot No. 9," as shown on plan of land hereinafter referred to . . .
 HOWEVER OTHERWISE bounded and described being Lot No. Twenty(20) as shown on plan of land entitled:
 "Plan of Rodase Villa; . . . ."
The Whittys allege that Serpa represented to them that the right of way was for use by the three lots (Whitty Affidavit, Exhibit H); in reliance thereon the Whittys ultimately faced their house towards what they perceived to be a "common driveway." The Whittys also have continually used the right of way as their driveway until the February 25, 1991 Notice of Interruption of Adverse Possession was recorded.
Defendant Robbins ("Defendant") bought Lot 9 in 1985. The Serpa/Robbins deed is silent with respect to the subject private right of way but does refer to the subdivision plan in further describing "lot No. Nine (9) as shown on plan entitled: "Plan of Rodase Villa; . . . ." (Exhibit L) For as long as Defendant Robbins remembers, the allegedly common driveway had been used continuously by all three owners.
In 1991, the instant controversy was sparked by the Defendant's receiving a building permit for and attempting to install a chain link fence around his property so as to prevent the Plaintiffs' use of the right of way. The Defendant's Notice of Interruption of Adverse Possession to the Plaintiffs followed the issuance of this building permit. Thereafter, in March of 1991, the Court entered an order staying the building of the fence and permitting the Plaintiffs to use the right of way until further Court order. Plaintiffs' present action seeking a permanent injunction against the Defendant followed.
The Prescriptive Easement
The Kotubys first allege that they have acquired a prescriptive easement over the portion of Lot #9 marked "Private R.O.W." on the recorded subdivision plan. "[I]n order to create an easement by prescription, claimants have the burden of establishing actual, open, notorious, hostile, and continuous use under a claim of right for ten years, as required by [the Rhode Island General Laws] § 34-7-1." Altieri v. Dolan, 423 A.2d 482, 483 (R.I. 1980). Each element under this standard "must be established by a preponderance of clear and satisfactory evidence." Id. The level of proof required to show a prescriptive easement is higher "than what is demanded in the usual civil action." Berberian v. Dowd, 104 R.I. 285, 289-90,247 A.2d 508, 511 (1968) (citing Parker v. Parker,103 R.I. 435, 238 A.2d 57 (1968)).
The evidence before this Court indicates that the plaintiffs have not met their burden with respect to each element of a prescriptive easement by clear and satisfactory evidence. Plaintiffs' use of the subject portion of Lot 9 was actual, open, and notorious as both Plaintiffs and the Defendant agree that the subject parcel was shared jointly among them. However, Plaintiffs' use was permissive not hostile. The Defendant testified that grantor Serpa had told him that he had given the Kotubys and the Whittys verbal permission to use the private right of way for ingress and egress to their respective properties as long as he (Serpa) owned Lot 9. The Plaintiffs also testified that Serpa had represented to them prior to their respective conveyances that the portion of property designated "Private R.O.W." was intended to be a right of way for the owners of Lots 19 and 20 to use for ingress and egress. Clearly, the evidence before this Court demonstrates that the use of the "Private R.O.W." was permissive, was regarded by the Plaintiffs as permissive, was recognized by the Defendant as permisssive, and continued to be permissive until the Defendant attempted to install a fence on the subject property and ultimately recorded a Notice of Interruption of Adverse Possession in 1991.
In Altieri v. Dolan, 423 A.2d 482 (R.I. 1980), such a "continued and shared use of [a] driveway between the parties" was considered use "by agreement and permission" and did not permit the finding of a prescriptive easement since "the driveway was used on a friendly and neighborly basis and not adversely. "Id. at 484. Similarly, in the case at bar, all parties demonstrated a mutual understanding that the right of way was for the use of the adjacent properties. It is well-settled that ". . . mere permissive use of a way, no matter how long it may have been enjoyed, will never ripen into an easement by prescription."Foley v. Lyons, 85 R.I. 86, 89-90, 125 A.2d 247, 249 (1956).
Furthermore, "[t]he law presumes that the character of the occupancy having been at first not adverse, continues to be of the same nature in the absence of some conduct indicating a change." Tefft v. Reynolds, 43 R.I. 538, 542, 113 A. 787 (1921) (citation omitted). To establish a claim of adverse possession, strict proof by "`evidence that is unambiguous and affirmative in its character'" is required. Martineau v. King, 120 R.I. 265,386 A.2d 1117, 1119, (1978) (Quoting Chace v. Anarumo,104 R.I. 48, 51, 241 A.2d 628, 629 (1968)). Plaintiffs' facing their houses and/or garages towards the subject right of way does not constitute the requisite affirmative act necessary to constitute notice to the Defendant that their use was ever hostile and under claim of right as opposed to merely permisssive. See Picernev. Sylvestre, 122 R.I. 85, 404 A.2d 476, 480 (1979). In fact, the Defendant recognized the Plaintiffs' permissive use and accordingly did not object to same until he learned from neighbor Cox in 1991 that Plaintiffs intended to claim the right of way as their own. Accordingly, the Defendant obtained the building permit to construct a fence along the entire perimeter of Lot 9, ultimately recording the Notice of Interruption of Adverse Possession on March 6, 1991.
Additionally absent from the plaintiffs' § 34-7-1 claim of easement by prescription is evidence of their requisite use of the right of way for a period of ten years. As evidenced by the dates of conveyance, Plaintiff Kotubys' use began no earlier than June 24, 1981; while Plaintiff Whittys' use commenced no earlier than December 19, 1984. Their instant action for an easement by prescription was filed on or about March 12, 1991, thus markedly short of the requisite ten year statutory period with respect to the Whitty claim and just short of the requisite period for the Kotuby claim. Accordingly, as plaintiffs have not met their burden with respect to the adversity and statutory use period requirements for proving the existence of a prescriptive easement, their claim for such easement must fail.
Easement by Implication
An easement by implication is created "upon severance of common ownership," Wiesel v. Smira, 49 R.I. 246, 248-9,142 A. 148, 149 (1928), and arises from a "pre-existing condition often referred to as a `quasi-easement.'" Id. (citing Tiffany RealProperty, Vol. 2, p. 1270, § 363). "Quasi-easements" include "whatever is apparent and continuously necessary to the beneficial use and enjoyment of the granted property," if the grantor is able to convey such rights. Id., 49 R.I. at 249, 142 A. at 149. For example, "continuity, apparency, and necessity" are all considered indicative of an implied easement. Id., 49 R.I. at 250, 142 A. at 150. Although ". . . the presence or absence of any or all of these characteristics is not conclusive, "Weisel, 49 R.I. at 250, 142 A. at 150, courts have traditionally required some showing of necessity before granting an implied easement, especially if there is no express language indicating an easement. Evans v. Dana, 7 R.I. 306 (1862);Weisel, 49 R.I. at 246, 142 A. at 148; Kusiak v. Ucci,53 R.I. 36, 163 A. 226 (1932); Providence Tool Co. v. Corliss SteamEngine Co., 9 R.I. 567 (1870). The test for necessity is "whether the easement is reasonably necessary for the convenient and comfortable enjoyment of the property as it existed when the severance was made." Wiesel v. Smira, 49 R.I. at 249, 142 A. at 150.
Although there is evidence before the Court of continuity as plaintiffs enjoyed continuous use of the right of way, and apparency, as the private right of way connected the subject properties to Kickemuit Avenue from at least 1981, the requisite necessity for establishing an implied easement is not demonstrated by the evidence. The Kotuby property, Lot 19, and the Whitty property, Lot 20, both possess one hundred and twenty (120) feet of frontage on Kickemuit Avenue, unlike the allegedly "servient" property, Lot 9, which possesses approximately thirty (30) feet of frontage on same avenue. If Plaintiffs did not utilize the subject private right of way to gain access to Kickemuit Avenue, they would have to create alternate access to Kickemuit Avenue via separate driveways which would provide direct access from their lots to said avenue. The evidence including photographs presented to this Court shows that Kickemuit Avenue is a residential street on which the homes possess their own frontage on and driveways to this avenue. Unlike the "necessity" found by the Court in Weisel, wherein an easement by implication was granted over a sewer drain on a neighboring lot because it was the ". . . only means through which the sewerage . . . was carried to the public sewer,"Weisel, 49 R.I. at 247, 142 A. at 149, the Plaintiffs at bar have ample, alternate room to create separate and even more direct access from their properties to Kickemuit Avenue. Although the Kotubys might be required to tear down a portion of an existing stone wall fronting Kickemuit Avenue, and the Whittys allege that a septic system cuts into the affected area and might have to be traversed, this Court finds that alternate access from each Plaintiff's one hundred and twenty (120) feet of frontage to Kickemuit Avenue might be initially "inconvenient" at best. Accordingly, this Court finds that the Plaintiffs' access to Kickemuit Avenue via the private right of way does not constitute the requisite necessity warranting an easement by implication.
Essentially, ". . . no necessity can exist and consequently no easement be implied where a substitute can be procured without unreasonable trouble or expense." Weisel, 49 R.I. at 250, 142 A. at 258. Although relocating access to Kickemuit Avenue may constitute trouble and expense for the Plaintiffs, this Court does not find such trouble and expense to be unreasonable. As it is well settled that ". . . title to real estate should remain free and unfettered, any individual who wishes to establish an easement in the land of another must establish the existence of such an easement by clear and convincing evidence. "Robidoux v.Pelletier, 120 R.I. 425, 391 A.2d 1150, 1156 (1978) (QuotingBerberian V. Dowd, 104 R.I. 585, 247 A.2d 508 (1968)). Accordingly, a way must be one of necessity not one of convenience to be granted by implication if no words in the conveyance evidence an intent to convey. See Providence ToolCompany v. Corliss, R.I. 564, 15 A. 362 (1870).
G.L. 56 (1984 Reenactment) § 34-11-28, entitled "Rights, privileges, and appurtenaces included in grant. -," provides that
 In any conveyance of real estate all rights, privileges and appurtenances belonging or appertaining to the granted estate shall be included in the conveyance, unless a different intention shall clearly appear in the deed, and it shall be be unnecessary to enumerate or mention them either generally or specifically.
A deed must be construed according to its plain meaning.Kusiak v. Ucci, 53 R.I. 36, 38, 163 A. 226 (1932). Accordingly, if a party means to grant a way which is not essential to the enjoyment of the premises he must use proper and apt words for that purpose. Id. at 39 (citations omitted). The subject Kotuby and Whitty deeds contain no express grant of the subject private right of way. Therefore whether the grant of an easement by implication has occurred through the subject conveyances of real estate will depend on the intent of the parties ". . . which must clearly appear in order to sustain an easement by implication."Id. (quoting C.J. 913).
Essentially, Plaintiffs maintain that in addition to the grantor Serpa's verbal intent to convey to them an easement over the subject portion of Lot 9, the grantor's intent is additionally evidenced on the face of the subject deeds. The Kotuby deed is silent with respect to either the term "Private R.O.W." or any reference to "Rodase Villa Subdivision," on which is labeled "Private R.O.W." However, the Whitty deed refers to the conveyed parcel as
. . . bounded and described as follows: . . . WESTERLY BY a `Private Row-Portion of Lot No. 9',
 . . .
 HOWEVER OTHERWISE bounded and described being LOT NO. TWENTY (20) as shown on plan of land entitled: `Plan of Rodase Villa; . . .'
The "Plan of Rodase Villa" reveals a clearly marked subdivision on which "Private R.O.W." is delineated. The case, Kenyon v.Nichols, 1 R.I. 411, 415 (1851), involved a deed which referred to a plat for a description of the lot from which seaweed was to be taken, via a so-called "appurtenant right of taking seaweed." The Kenyon Court noted that
. . . although a plat may be referred to in the deed for a description of the lot from which the sea-weed was to be taken, yet such reference cannot be made to convey the right to take it. That must be done by words of the deed.
The Kenyon Court further noted that when a plat is referred to ". . . for a description of the land intended to be conveyed, such reference is not to enlarge or diminish the effect of the words of conveyance in the deed but to give them efficiency."Id. Again in Roberts v. Osburn, 589 P.2d 985 (Kan. App., 1979) here involving a conveyance containing a reservation of an easement "as shown by the recorded plat," the Court found that the reference to the plat was for the purpose of identification of the property and thus served as a descriptive tool, as ". . . the plat itself does not convey." Id. at 993.
Not involved here are the streets or roads that existed on a plat map which was referenced in a conveyance of one platted lot thereby effectively conveying an easement appurtenant to use said streets See Robidoux v. Pelletier, 120 R.I. 425, 391 A.2d 1150
(1978), or the deed conveying a subdivision parcel "subject to a right of way recorded as shown on said plan" and making specific reference to a subdivision plan and thus successfully reserving an easement across the parcel in favor of the remaining parcels. Before this Court are the instant mere reference to the Private Row-Portion of Lot 9" as a boundary description and the reference to Rodase Villa as a further property description which do not alone or even when viewed with all the facts and surrounding circumstances existing at the time of the deeds' executions serve to convey an easement over Lot 9. Additionally, the word "Private" affixed to the term "right of way" is like the "private" driveway in Kusiak which was permissively used for more than forty years and was eventually closed as it had all along been and would with the loss of permission return to use as "private."
With respect to granting an easement, at least some indication must exist, other than the reference to a subdivision plan or driveway, showing that the grantor intended to grant an easement. In Spangler v. Schaus, 106 R.I. 795, 800-801,264 A.2d 161, 164 (1970), the deed of the plaintiff's predecessor in interest stated:
 [I]t is further understood and agreed that the expense of opening the said Noanett Street for travel by the abutters on the same, as well as the expense of maintaining the same, shall be jointly borne by the abutters in proportion to their respective frontage on the said street.
This wording clearly contemplates the granting of some interest in Noanett Street to the abutters, as evidenced by the permitted travel on the street and the joint maintenance. There is no evidence indicating such contemplation in the instant case. Unlike Spangler, the instant case involves a gravel driveway and not a way designated as a street or road. Further, the Court finds credible and compelling Defendant's testimony that he rightly bore the responsibility and costs of maintaining his property. The Whitty deed merely refers to the driveway as a "Private Row-Portion of Lot 9." There was never any express indication that the driveway was a road or street or subject to use by anyone other than its fee owner. See also Layman v.Gnegy, 337 A.2d 126, 129 (Md. 1975) ("private roadway" subject to easement). In Catalano v. Woodward, 617 A.2d 1363, 1367 (R.I. 1992), a prior deed expressly reserved an easement for the benefit of the land in question. Accordingly, the Plaintiffs are not entitled to an easement by implication.
As the Court finds that neither the Kotubys nor the Whittys are entitled to an easement by prescription or by implication, the Plaintiffs' request for an injunction is hereby denied.
Counsel shall submit the appropriate orders for entry.