MICHAEL J. WALSH *et al. vs.* MARSHALL MORGAN, *Admr.*

APRIL 21, 1938.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Moss, J.   This is a suit in equity brought by Michael J. Walsh and his wife, Theresa Walsh, on July 19, 1935, against the respondent as administrator of the estate of Mary Coyle, late of the city of Philadelphia, Pennsylvania.   She was named as the payee in a promissory note made by the complainants under date of January 19, 1903 for $3200, and as the mortgagee in a power of sale mortgage deed of the same date and recorded on January 22, 1903, securing the payment of that note and covering real estate in the city of Providence in this state.   This real estate was then, and until after the commencement of this suit continued to be, owned in fee simple by the complainants and in their possession.

Mary Coyle died intestate on February 7, 1908, and on February 15, 1935 the respondent, by a decree of the probate court of the city of Providence, was appointed the administrator of her estate in Rhode Island.   Later, purporting to act under the power of sale in the mortgage deed, he, as such administrator, advertised the property for sale at public auction, to take place on July 22, 1935.   The note and mortgage have been lost and no evidence that either of them was discharged or transferred was produced.

In their bill of complaint the complainants set forth, in substance, the above facts and alleged that the mortgage was unenforceable and barred from foreclosure by reason of the fact that they had remained in possession as mortgagors of the mortgaged real estate for more than twenty consecutive years next before the filing of their bill and during that pe-

riod had not acknowledged or recognized the fact of the validity of either the note or the mortgage as a valid obligation and lien respectively; and they denied that the note and mortgage were enforceable.

They prayed that the agents, attorneys and servants of the respondent be temporarily and permanently restrained and enjoined from proceeding with the sale of the real estate; that the note and mortgage deed be cancelled and discharged; that the discharge thereof be recorded in the proper recording office; and that the note and mortgage deed be removed as a cloud on the title of the complainants to the mortgaged real estate. No other specific or general relief was prayed for. A motion was later filed by the complainants for leave to amend the bill by adding a prayer for general relief; but apparently no such amendment was ever made.

In his answer the respondent neither admitted nor denied the ownership by the complainants of the mortgaged real estate. He denied that the mortgage was unenforceable and barred from foreclosure for the reasons alleged by the complainants. He admitted all the other allegations of the bill, but alleged that although on January 19, 1903 the complainants executed a mortgage deed and note in the name of Mary Coyle, they were delivered to, became the property of, and always did remain the property of, Thomas Dorsey; that he died on October 15, 1934; that at his death and for a long time prior thereto he was insane; and that "the said Marshall Morgan on February 15, 1935, was appointed administrator of the estate in Rhode Island of said Thomas Dorsey and duly qualified as such administrator and is now so qualified." However, no appearance was entered by him as such administrator.

Before the case was heard in the superior court on its merits, the complainant Michael J. Walsh died, his death was suggested on the record and his heirs entered their appearance as complainants. Apparently, they and Theresa Walsh have continued to own the real estate. After the case

had been heard on bill, answer and replication before a justice of the superior court, he filed a rescript, in which he discussed the evidence and found from it that the money which was loaned to Michael J. Walsh, and for which the note in question was made, was the money of Dorsey, who was the brother of Mary Coyle; that Dorsey retained the note and mortgage and enjoyed all the benefits accruing from the investment; "that Mary Coyle in her lifetime held the legal title only to the mortgage and that a trust resulted in favor of Thomas Dorsey, who paid the consideration for the mortgage which was in the name of Mary Coyle."

He likewise found that, according to the testimony for the complainants, the last payment on the note was made in 1913, and that about $1200 of the principal of it still remained unpaid. He also found that Dorsey had been insane for many years before his death on October 15, 1934; and that his mental condition was "a complete bar to the running of any period of time in favor of the mortgagors." He further found that the evidence did not show that the mortgagors ever held adversely to the mortgagee. The final conclusion of the justice was "that no valid reason has been shown why the respondent should not be permitted to foreclose his mortgage and the bill of complaint must therefore be dismissed."

Later there was a reargument, granted on the motion of the complainant, and then the justice filed a supplemental rescript in which he found that inability to produce the original note and mortgage, because they could not be found, is not a bar to foreclosure by the administrator. He therefore adhered to his previous decision and a decree was entered, by which a temporary injunction against foreclosure by the respondent was dissolved and the bill of complaint was denied and dismissed. The case is now before us on the complainants' appeal from this decree.

We agree with the justice of the superior court in his last finding. The production of a certified copy of the mortgage

as recorded in the land records, in the absence of any proof, from the records or otherwise, of its having been discharged or transferred, makes out a *prima facie* case of the continued existence of the rights and obligations created by its execution and delivery. *Wilson* v. *Stevens*, 105 N. J. Eq. 377, 148 A. 392. In that case the court said that a mortgage bond is not the debt but only evidence of its existence and that the loss or destruction of the bond cannot *per se* defeat the right to foreclose under the mortgage. The court added: "At the hearing, the recorded mortgage was produced, and its execution and delivery thereby duly proven." The evidence in the instant case satisfactorily accounted for the failure of the respondent to produce the note and mortgage, without giving rise to any inference or presumption that they had been discharged or transferred.

It is our opinion, after a consideration of all the evidence, that all the findings of fact by the justice of the superior court are either admitted by the parties or supported by the evidence. We also agree with his conclusions that Dorsey was the equitable owner of the note and mortgage, Mary Coyle having only a bare legal title; and that, under the circumstances, the lapse of time was no bar, either at law or in equity, to the foreclosure of the mortgage now.

As to the former of these conclusions, the only evidence against it was the fact that Mary Coyle was named in the mortgage as the mortgagee and as the payee of the note, without any mention of Dorsey; and that a number of times, in asking the mortgagors for payments by them, he stated that Mary Coyle needed the money.

On the other side of the issue there was uncontradicted evidence that the mortgagors never met her or had any communication with her or any information about her; that, according to the uncontradicted testimony of her daughter, Mary Coyle and her husband were very poor and, for a considerable time before her death in 1908, were dependent on the daughter for support; that upon her death she left no es-

tate and no papers of any kind belonging to her were found. There was nothing to show that she knew anything about the mortgage.

There was also evidence that Dorsey was a man of some means and made investments in other mortgages; that the money represented by the mortgage was actually paid by him to the mortgagors; that all payments by them, continuing to about the end of the year 1913, were made to him, all the later ones for some years being in the form of postal money orders payable to him and sent to his address in Philadelphia. All of the numerous receipts that were put in evidence were signed by him in his own name only. It is quite possible that she made to him a transfer of the mortgage and that it was lost with the note and mortgage, without having been recorded. In this state of the evidence, we cannot say that the justice of the superior court was not justified in finding that Dorsey was the real and equitable owner of the mortgage. See *Hudson* v. *White,* 17 R. I. 519, 23 A. 57.

The latter conclusion of the justice, namely, that under the circumstances of this case the lapse of time was no bar, either at law or in equity, to the foreclosure of the mortgage now, was based by him, in large part at least, upon the ground that the insanity of Dorsey for many years before his death prevented time from running against him during that period. Without passing upon the validity of that ground, we have reached the same conclusion upon a different ground, which to our minds is conclusive and less controversial.

The burden of proving that the right to foreclose the mortgage has been barred by the lapse of time is upon the complainants. They admit that foreclosure under a mortgage is not barred by the fact that the right to bring an action on the mortgage note has been barred by the lapse of time. 2 Jones on Mortgages (8th ed.) 1040, § 1542. This text cites in support of this rule a great many cases from many states, including *Ballou* v. *Taylor,* 14 R. I. 277, which does support it.

Therefore, we do not need to consider the application of that provision of our statute of limitations which covers actions on promissory notes.

The complainants rely on the following statement in the above work by Jones, at page 1042: "Although the mortgagee may foreclose his mortgage after the debt is barred he can not foreclose it after the statutory period has run against the mortgage as a specialty." We have some doubt whether this rule applies to a sale under a power of sale in the mortgage; but at any rate it does not apply, unless a proceeding in court to enforce the mortgage has been barred by the lapse of the period stated in that provision of the statute of limitations which relates to actions upon instruments under seal. That period in this state is twenty years.

But it is elementary in the law relating to such statutes of limitations that the period provided does not begin to run until a cause of action exists on which an action can legally be brought. It is our opinion that under the peculiar circumstances of the instant case it was not shown that any proceeding could have been brought until after the appointment of the respondent as administrator.

According to the mortgage the interest was payable in advance. The complainants' evidence shows that interest was paid in 1913 and they do not claim that there was any failure to pay interest on the note until the year 1914. Their uncontradicted evidence shows that in December 1913 the mortgagors had an opportunity to sell the mortgaged property and had actually entered into an agreement to sell and convey it; that they had accepted an advance payment of $25 from the purchaser; but that they could not sell and convey it, unless they paid up the mortgage and had it discharged.

Therefore, they sent a letter in December 1913 to Thomas Dorsey, addressed to the address in Philadelphia to which they had been sending payments to him on the mortgage note. This letter was returned undelivered and the envelope

is on file as an exhibit. The evidence shows that for several months afterwards they made efforts to locate him by letter and through the postal and police authorities in Philadelphia and by advertising in the newspapers there. They even sent their real estate agent, who had died before this case was heard, and he reported that he had tried without success to locate Dorsey there.

Apparently the mortgagors made every reasonable effort to locate Dorsey, so that they could pay off the mortgage and sell and convey the property, but were unable to locate him and never did locate him or hear anything from or about him. As to Mary Coyle, they knew nothing about her, and in fact she had died in 1908, as above stated. No demand was made on them for any payment on the mortgage note until after the recent appointment of the respondent as administrator of the estate of Mary Coyle.

Under these circumstances, we do not see how it can be held that there was any default by the mortgagors in the performance of the conditions of the mortgage before the time when they were informed of that appointment. Therefore, we do not see how it can be held that before that time there was any existing cause of action on which proceedings, legal or equitable, could be brought against the mortgagors, on the mortgage. From this it follows, in our judgment, that it cannot be held in this case that the statute of limitations began to run in favor of the mortgagors until very recently.

The complainants also contend that they can take advantage of the rule laid down in *Ballou* v. *Taylor, supra,* as follows: "The remedy on the mortgage ordinarily remains good until the note is paid, or may be presumed to have been paid, or until the remedy has been lost by the lapse of twenty years without recognition of the mortgage as a valid lien by the mortgagor remaining in possession." As to the matter of presumption of payment, any such presumption is completely rebutted in this case, by evidence for the complainants which clearly shows that at the end of 1913 about $1200

remained unpaid on the mortgage note and that no later payments were made on it, and by uncontradicted evidence which explains why no later payments were made or demanded. *Magee* v. *Bradley,* 54 N. J. Eq. 326, 329, 35 A. 103; *Rau* v. *Doremus,* 101 N. J. Eq. 809, 812, 139 A. 170, 171.

As to their contention that any enforcement of the mortgage by sale of the real estate is barred because the mortgagors remained in possession of the property for more than twenty years without recognition of the mortgage lien, that contention must be based on the statute as to adverse possession. But there is no evidence in this case that, before demand was recently made on them by the respondent, the mortgagors' possession of the real estate was ever adverse to that of the mortgagee or of anyone else who would be entitled to enforce the mortgage.

In all ordinary cases a mortgagor remains in possession of the mortgaged property, with the implied consent of the mortgagee, until such consent is terminated by the mortgagee for some breach by the mortgagor. The statute of adverse possession does not begin to operate until the possession becomes clearly adverse. *Doyle* v. *Mellen,* 15 R. I. 523, 8 A. 709; *Tripe* v. *Marcy,* 39 N. H. 439; 2 Jones on Mortgages, 1052, § 1551. In *Doyle* v. *Mellen, supra,* this court, at page 526, said: "Whether we regard one who owns the equity of redemption as a tenant, or as one holding in privity with and subject to the mortgagee's right of entry, his holding is not inconsistent with the title of the purchaser at the mortgagee's sale. There is, therefore, no adverse holding, no ouster of the owner, and no disseizin, 'until the possession before consistent with the title of the real owner becomes tortious and wrongful by the disloyal acts of the tenant, which must be open and notorious, so as to preclude all doubt as to the character of the holding or the want of knowledge on the part of the owner.' "

In the instant case there is no evidence that the possession of the mortgagors ever became adverse until a demand was

made on them by the respondent. There was nothing to indicate that they denied the validity and enforceability of the mortgage until that time. In fact, they stated in their bill of complaint that they had "remained in possession *as mortgagors* of the premises for more than twenty (20) consecutive years next before the preferring of this bill." (italics ours)

It is true that they followed this statement with the statement that during that period they had "not acknowledged nor recognized the fact of the validity of either said note or said mortgage as a valid obligation and lien respectively on said premises." But they did not state, nor was there any evidence, that before the demand made on them by the respondent they had ever in any way shown that they did not acknowledge or recognize the validity of these instruments. The absence of such acknowledgment or recognition might under some circumstances raise a presumption that the note and mortgage had been satisfied, but, as we have already stated, such a presumption was rebutted by the evidence in this case.

We, therefore, hold that the long possession of the mortgaged property by the mortgagors does not prevent the enforcement of the mortgage. It is also clear from the evidence that the right to enforce it has not been lost by laches.

One of the grounds upon which the complainants have contended that their appeal should be sustained is that certain evidence offered by them was wrongly excluded at the hearing in the superior court. This was evidence of statements made by the complainant Michael J. Walsh, now deceased, to his attorney in this case, after a demand for payment of the mortgage note had been made on him by the respondent, but before the present suit was begun. The contention is that this evidence, though hearsay, was admissible under the provisions of P. L. 1927, chap. 1048, which reads: "A declaration of a deceased person shall not be inadmissible in evidence as hearsay if the court finds that it was made in

good faith before the commencement of the action and upon the personal knowledge of the declarant."

The court did not find that these conditions were satisfied. It was not shown that the statements to be testified to were made upon the personal knowledge of the deceased or concerned matters which were material in the case. It is obvious that they were made after the respondent had demanded payment of the note and only a very short time before the bringing of the present suit. We are of the opinion that considerable discretion must be permitted to a trial justice in applying this statute; and that, in view of the above considerations and the special circumstances of this case, the findings of the superior court should not be set aside by reason of the exclusion of this offered testimony.

It follows from what we have said in this opinion that the mortgage is enforceable. We are also inclined to the opinion that if it is properly enforceable by the exercise of the power of sale contained therein, the one to exercise that power is the administrator of the estate of Mary Coyle, because she was named as mortgagee and the power of sale was therein conferred upon "the said mortgagee, her executors, administrators or assigns." *Richmond* v. *Hughes,* 9 R. I. 228. See also *Thurber* v. *Carpenter,* 18 R. I. 782. In the latter of these cases it was held that a foreign administrator of the estate of a mortgagee of real estate in this state, under a power of sale mortgage in the usual Rhode Island form, could execute the power of sale, since in doing so he acted, not strictly in his capacity as administrator, but rather as the appointee of the mortgagor, being *"persona designata"* and deriving his authority from the contract of the parties, and not from a court of another state.

But we have some doubt whether the administrator of the estate of the person named as mortgagee in such a mortgage can properly exercise the power of sale in a case where, as has been found from the evidence in the instant case, the person so named as mortgagee was at best only a bare trustee,

who, so far as appears, never knew anything about the mortgage, and the whole beneficial interest was in another. We have been able to find no reported case in which this question has arisen.

We have no doubt that upon the facts proved in the instant case, a bill in equity for a foreclosure under the mortgage can properly be brought, and it is our opinion that there are in the instant case other special reasons why the foreclosure should take place in the exercise of the equity powers of the superior court, rather than in the exercise of the power of sale contained in the mortgage.

There was uncontradicted evidence that the mortgagors at the end of 1913 had a chance to sell the mortgaged property at a price which was satisfactory to them, were prepared to pay what they owed on the mortgage note and wished to do so and to get a discharge of the mortgage. There was also uncontradicted evidence that they made all reasonable efforts to pay the note but were unable to do so, because they could not locate Thomas Dorsey; and they received no further information about him or Mary Coyle until after Marshall Morgan had been appointed administrator of the respective estates of these two persons.

Under these circumstances, we are of the opinion that it would be highly inequitable to compel the complainants to pay interest on the installments of interest on the mortgage note which have not been paid for about twenty-four years. Evidence may be available that would prove it to be inequitable to require that the complainants pay interest on the unpaid principal at so high a rate as 6% per annum or for the whole period when interest was not paid; and it is even reasonably conceivable that evidence may be available that would prove it to be inequitable to require them to pay any interest at all during that period. It is also our opinion that equity requires that the total amount which the present complainants should pay for a discharge of the mortgage should be determined and that they should be given an op-

portunity to pay that amount, before any foreclosure takes place.

We are further of the opinion that this amount cannot be properly and conclusively determined unless the administrator of the estate of Thomas Dorsey is a party to the proceedings in which the determination is made; and that such determination and a foreclosure of the mortgage cannot properly take place in the present suit, in which the only relief prayed for is predicated on the invalidity of the mortgage and there is no cross-bill for foreclosure by the exercise of the equity powers of the court. Such a determination could properly be made in a suit in equity, either for redemption of the mortgaged property from the lien of the mortgage or for foreclosure under the mortgage, in accordance with general laws 1923, chap. 302, sec. 14 or sec. 15.

From our finding set forth above that a foreclosure by the present respondent under the power of sale should not be permitted, we draw the conclusion that the complainants are entitled to a permanent injunction against such foreclosure, although they are not entitled to any other relief in this suit. Therefore, the final decree of the superior court should be reversed and a decree entered in that court in accordance with this opinion.

The complainants' appeal is sustained and the decree appealed from is reversed. On April 27, 1938, the parties may present a form of decree, in accordance with this opinion, to be ordered to be entered in the superior court.

*McKiernan, McElroy & Going, Edward F. McElroy, Patrick J. McElroy,* for complainants.

*Morgan & Morgan,* for respondent.