404 A.2d 476.

ETTORE C. PICERNE *vs.* ROLAND P. SYLVESTRE.

JULY 30, 1979.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

KELLEHER, J.  This is but another chapter in the ongoing controversy between Ettore C. Picerne (Picerne) and Roland P. Sylvestre and his wife, Elizabeth, (the Sylvestres). On April 26, 1960,[1] Cranston's tax collector conducted a tax sale at which Picerne purchased the Sylvestres' property. In October 1971, Picerne filed a petition in the Superior Court to foreclose the taxpayers' right of redemption, and the Sylvestres responded with the defense of adverse possession. Later, in June 1972, the Superior Court ruled that such a defense had no place in a foreclosure proceeding. The Sylvestres' appeal from this rejection was considered by a four-member court. The court was evenly divided regarding the appropriateness of the defense.[2] Thereafter, the Sylvestres' motion for reargument before the full court was granted.[3] The full court was of the opinion that the Sylvestres had a right to be heard and present evidence in support of their adverse-possession claim.[4] The case was remanded to the Superior Court, where a justice other than the one who presided at the 1972 hearing listened to evidence adduced by the litigants.

---

[1]In testifying, Picerne said that the sale took place on May 25. However, the tax collector's deed indicates that the sale occurred on April 26, 1960. The collector's deed was executed on May 25 and recorded the next day.

[2]*Picerne* v. *Sylvestre*, 112 R.I. 682, 315 A.2d 62 (1974).

[3]*Picerne* v. *Sylvestre*, 112 R.I. 945, 316 A.2d 348 (1974).

[4]*Picerne* v. *Sylvestre*, 113 R.I. 598, 324 A.2d 617 (1974).

In 1975, when the Sylvestres began their presentation of evidence in support of their adverse-possession claim, all the parties agreed that the trial justice, in assessing the claim, could consider the evidence at the hearing, plus the transcript of the evidence taken in 1972 when Picerne was attempting to foreclose the right of redemption, along with the exhibits introduced at that hearing.

The Sylvestres live in a one-family home situated at 83 Packard Street in Cranston. They purchased this property in May 1951. Subsequently, in 1957, they mortgaged the premises in the amount of $8,000. The mortgagee is Mr. Sylvestre's brother, Norman. The Sylvestres' testimony indicates that during the 10-year period beginning on May 25, 1961, the exterior of the house had been painted on two different occasions, aluminum combination windows had been installed, and the front stairs had been replaced. They themselves performed such chores as mowing the lawn, and papering and painting the interior of the premises. The Sylvestres insisted that they knew nothing about the 1960 tax sale. During this 10-year period, they paid no municipal taxes but explained to the trial justice that they assumed that Norman, the mortgagee, was attending to this detail. The husband informed the trial justice that the repairs and maintenance done during the decade in question were just part of a routine performed since they first purchased the property. According to the husband, the first time he was aware that Picerne was claiming an interest in the property was in 1971, when he was served with a process in connection with the foreclosure petition. He also denied receiving any communication from the tax collector notifying the Sylvestres about the overdue taxes and the proposed sale.

In ruling for the Sylvestres, the trial justice found that they had (1) maintained and repaired the property "openly and notoriously" and (2) exercised "open dominion" and exclusive occupation of the property, and that (3) such occupation and dominion were so overt that they had ceased to be subordinate to Picerne. In addition, the trial justice in his written decision observed that there was no evidence which

would support the belief that the Sylvestres had been notified of Picerne's claim or that they ever recognized Picerne as the legal owner of the property. The trial justice also commented that no evidence was presented by Picerne indicating that a "certified letter" had been sent to the Sylvestres informing them about the scheduled sale.

In challenging the trial justice's conclusion that the Sylvestres had acquired title to the Packard Street premises by way of adverse possession, Picerne claims that the Sylvestres failed miserably in attempting to establish the hostility of this possession. While we think there is much to be said for this contention, we would first point out that the trial justice's remark about the lack of evidence concerning the tax collector's certified letter about the sale is totally erroneous.

As noted before, part of the evidence which was available for the trial justice's consideration was the transcript relating to the "foreclosure" facet of the dispute and the exhibits presented at that time. One of the exhibits is the tax collector's deed which runs to Picerne. It was executed on May 25, 1960, and recorded the following day. In the deed the collector recites that notice of the sale was "duly served" upon all three Sylvestres[5] 20 days prior to the sale. General Laws 1956 (1970 Reenactment) §44-9-10 specifies that resident taxpayers must be given at least 20 days' notice of any proposed tax sale with the notice being given either by registered or certified mail, or by personal service. Section 44-9-12 provides that a collector's deed must be recorded within 60 days of the sale and, if so recorded, the deed shall be "prima facie evidence of all facts essential to the validity of the title thereby conveyed." Thus, the collector's May 25 deed is evidence that the city served the Sylvestres either personally or by certified mail, and the collector's assertions give rise to an inference that despite the Sylvestres' professed concern about the lack of a certified letter, they were well aware of what was going on in the spring of 1960.

[5]The third Sylvestre is Norman, the mortgagee. General Laws 1956 (1970 Reenactment) §44-9-11 requires the collector to give notice of the sale to mortgagees of record. Norman did not testify.

In his decision the trial justice likened the Picerne-Sylvestre dispute to the controversy detailed in *Adams* v. *Parks*, 435 P.2d 122, 126 (Okla. 1967), and then went on to refer to the following portion of the Oklahoma Supreme Court's opinion:

> " ' " 'A party in actual possession of real estate cannot be ousted from such possession or his title divested by merely recording a tax deed of which he may not be aware and under which nothing is claimed. If a party claims under a tax deed and invokes the aid of the special statute of limitations, he must bring himself within the rule as to adverse possession.' " ' "

In their brief the Sylvestres Cite *Adams* v. *Parks,* as standing for the proposition that a "paper title-holder out of possession must bring himself within the rules as to Adverse Possession." Both the Sylvestres and the trial justice fail to realize that there is a difference between Oklahoma's tax-sale statute and ours, and, as will be seen, there is a reason for the difference.

In *Shaffer* v. *Mareve Oil Corp.*, 204 S.E.2d 404, 408 (W. Va. 1974), the court points out that in the early history of our country courts were prone to protect the landowner by scrutinizing and narrowly construing the statute against the tax purchaser and in favor of the property owner. However, the depressed economic conditions of the 1920's and the 1930's caused the legislatures to enact more comprehensive laws relating to tax sales so as to boost the declining public treasuries. The statutory revision had two goals: afford a measure of stability to tax titles, and vest title to real estate in responsible individuals who would assume and pay their fair share of the tax burden. To attain these goals, one or more of three types of statutes were usually enacted: a presumptive statute, whereby the tax deed can be considered as either prima facie evidence or conclusive proof that the various statutory requirements have been met; a curative statute, which provides that the tax deed is valid notwithstanding irregularities of various sorts; and, thirdly, a short statute of limitations, which bars the right to bring suit to set aside the deed after a stated period of time. The Oklahoma statute[6] to

---

[6] 12 Okla. St. Ann. §93.

which the court alluded in *Adams v. Parks,* precludes a challenge to the tax sale unless suit is brought within the 5-year period following the recording of the tax deed. However, a purchaser who wishes to invoke this statute is required to take possession of the premises for 5 continuous years.

In *Town of Jamestown v. Pennsylvania Co. for Banking & Trusts,* 101 R.I. 274, 279, 221 A.2d 821, 823-24 (1966), we noted that in 1946 the General Assembly revamped the tax-sale statute. The 1946 legislation, which is now known as G.L. 1956 (1970 Reenactment) ch. 9 of title 44, contains two of the clauses usually employed to validate a tax deed. Section 44-9-12 stipulates that the tax deed recorded within 60 days of the sale is prima facie evidence of the facts essential to the validity of the title being conveyed, and §44-9-25 directs that no tax title shall be invalidated for any error or irregularity which is neither substantial nor misleading, whether the error or irregularity occurs in the proceedings of the collector, the assessor, or any other official or officials charged with duties in connection with the establishment of such tax title. There is no requirement in Rhode Island law that the purchaser take possession before laying claim to the real estate purchased at a tax sale. In fact, as in this case, challenges to the tax title can be made as late as a decade or so after the sale.

These omissions are sufficient in and of themselves to vacate the Superior Court judgment and order a reconsideration of this evidence by the trial justice. However, we believe, for the reasons that follow, that such a reconsideration is uncalled for.

When we first ruled that the Sylvestres should be accorded the opportunity to prove their adverse-possession claim, we stressed that they had the burden of proving by clear and convincing evidence that their occupation of the premises in question had ceased to be subordinate to Picerne's legal title and had been of such a nature that he was aware or should have been aware that the character of their occupation had

changed. In taking this position, we relied on previous pronouncements by this court in cases in which a mortgagor or his successor in a foreclosure suit defends on the basis of adverse possession. *Walsh* v. *Morgan*, 60 R.I. 349, 198 A. 555 (1938); *First National Bank* v. *Dispeau*, 32 R.I. 396, 79 A. 945 (1911). There, the court ruled that a mortgagor's possession does not become adverse until such time as the "open," "notorious," and "positive" acts of the mortgagor had alerted, or should have alerted, the mortgagee that the mortgagor was now claiming title to the property.

Our reference to the mortgagor-mortgagee relationship was purposeful. Under our tax-sale statute, the delinquent taxpayer's first year of possession is permissive, the permission coming through the generosity of the General Assembly because, by statute, the purchaser is precluded from seeking possession or demanding rent during that time period.[7] The taxpayer or any person having interest in the property has an opportunity, even after the foreclosure petition has been filed, to seek the court's permission to redeem the property.[8]

In fact, the Sylvestres in this litigation have sought the best of both worlds. They have not only claimed adverse possession, but if that defense does not prevail, they have asked the Superior Court to permit them to redeem the property.[9] Our adverse-possession statute was never intended to allow the possessor of property to mask his intent and then

---

[7]G.L. 1956 (1970 Reenactment) §44-9-12.

[8]G.L. 1956 (1970 Reenactment) §44-9-29.

[9]When a similar observation was made before the trial justice, he observed that the Sylvestres should not be faulted in regard to their "either/or defense because they were taking advantage of the alternative-pleading provisions of the Superior Court Rules of Civil Procedure. Actually, Super. R. Civ. P. 81(a)(2) exempts the tax-sale foreclosure proceedings from the operation of the rules. The adverse-possession plea is entertainable only because G.L. 1956 (1970 Reenactment) §44-9-31 requires that any question concerning the petitioner's title is to be raised in the foreclosure proceeding, or otherwise the respondent is "forever barred" from challenging the petitioner's title "in any other proceeding."

acquire the property by concealing the true situation from the record owner. In adverse possession, strict proof of all its elements is required. *Martineau* v. *King*, 120 R.I. 265, 268, 386 A.2d 1117, 1119 (1978). Hostility of possession necessary to establish adverse possession implies the denial of the owner's title; and possession, however open and long it may be, is not adverse without the denial of the owner's title. *Application of Kamakana*, 58 Haw. 632, 642, 574 P.2d 1346, 1351 (1978). Since the Sylvestres are seeking to convert permissive possession into one of outright ownership, they were required to show some affirmative act constituting notice to Picerne that their occupancy was hostile to the owner and they were claiming the property as their own. *Martineau* v. *King*, 120 R.I. at 269, 386 A.2d at 1119.

In looking at the affirmative acts taken by the Sylvestres which we believe might have alerted Picerne to the fact that the permissive possession had taken on a hostile air, we look at the painting of the house's exterior, the installation of the aluminum door and combination windows, and replacement of the front stairs. Any one of these activities might have warned Picerne that something out of the ordinary was stirring at 83 Packard Street. Mrs. Sylvestre testified that the house was first painted in 1964 and again in 1968. A receipt indicates that the downpayment on the 1964 project was given in October of that year. Her checks indicate that the aluminum products were first installed in 1965. Mr. Sylvestre told the trial justice that the front stairs were replaced in 1969 or 1970.

As noted before, the Sylvestres' claim covers the 10 years subsequent to May 25, 1961. Obviously, none of the affirmative acts to which we have alluded occurred in 1961. Thus, the first hint of hostility did not appear until 1964, 3 years into the 10-year period relied upon by the Sylvestres. Since the requisite period of hostility has not been shown, the Sylvestres' claim must fall.

The petitioner's appeal is sustained, the judgment appealed from is vacated, and the case is remanded to the

Superior Court where, at this late stage of the proceedings, the Sylvestres' prayer for permission to redeem can be considered.

*George Ajootian*, for defendant.

*James McAleer*, for respondent.