**Peter A. CARNEVALE et al.**

v.

**Joan L. DUPEE.**

**No. 2003–259–Appeal.**

Supreme Court of Rhode Island.

June 15, 2004.

James P. Marusak, Esq., Providence, for Plaintiff.

Neil P. Philbin, Esq., Peace Dale, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, and SUTTELL, JJ.

## OPINION

PER CURIAM.

Neighboring landowners, Peter A. Carnevale and Rochelle T. Carnevale (Carnevales), and Ronald J. Rodrigues (Rodrigues and collectively plaintiffs), the record owners of respective portions of a strip of land in the town of Jamestown, filed a claim in Superior Court seeking a declaratory judgment, injunctive relief and to quiet title after their abutting neighbor, the defendant, Joan L. Dupee (Dupee or defendant), disputed their ownership and claimed title by adverse possession.[1] Notwithstanding two trials in the Superior Court and a previous appeal to this Court, Dupee's counterclaim of ownership by adverse possession persists and is now before us for a second time. Although this case has been pending for nearly as long as the ten years required to establish a claim for adverse possession, we are constrained yet again to reverse the Superior Court judgment and remand the case for additional findings of fact.

At the initial Superior Court nonjury trial in 1999, the Carnevales and Rodrigues succeeded in establishing rightful ownership of their respective portions of the strip of land that is 46 feet by 675 feet, ending at Narragansett Bay.[2] However, upon Dupee's appeal, see *Carnevale v. Dupee*, 783 A.2d 404 (R.I.2001), (hereinafter *Carnevale I* ), this Court reversed the decision and remanded the case to the Superior Court for a new trial. Specifically, we concluded that the trial justice failed to address each and every element of adverse possession and decided the claim on flawed findings that neither Dupee nor her predecessors in title met the ten-year statutory requirement for adverse possession. A second nonjury trial ensued, from which this appeal arose.

In accordance with the clear mandate from this Court, the trial focused exclusively on the merits of Dupee's adverse possession claim. Over the course of two days, testimony was elicited about the use of the disputed land by Dupee and her predecessors in title, Thomas and Mildred McGrath and their son, Richard P. McGrath (collectively the McGraths). Dupee testified that when she purchased the land in 1978, she believed that the area surrounding the ponds and pump house and the cow-fencing along the southern and western boundaries of her parcel belonged to her. She testified that she maintained this land, as did her predecessors in title for many years, including mowing the lawn inside the fenced area and clearing walking paths throughout. A family friend of the McGraths verified that they engaged in similar acts of ownership at least a decade before Dupee acquired the prop-

---

1. The parcel is described as a forty-six-foot-wide "pan handle" of land which extends north to Narragansett Bay along the western portion of Dupee's land. The Carnevale lot lies primarily to the south of Dupee's parcel and the Rodrigues lot to the west. Moving westward across Dupee's land, the first 300 feet "belong undisputably to Dupee, the next 20 feet are claimed by the Carnevales and Dupee, and the following 26 to 30 feet are claimed by Rodrigues and Dupee." *Carnevale v. Dupee*, 783 A.2d 404, 406 (R.I.2001) (hereinafter *Carnevale I* ). For the Carnevales, this disputed parcel provides the sole means of direct access to the ocean from their home.

2. The Carnevales and Rodrigues purchased their adjacent lots on Westwind Drive in Jamestown, Assessor's Plat No. 8, Lots No. 662 and No. 663, respectively, from Jamestown Estates, Inc. at auction, by quitclaim deed in December 1990. Dupee purchased her abutting lot on North Main Road, Assessor's Plat No. 8, Lot No. 609, in 1978 from her immediate predecessor in title, Richard P. McGrath, the son of previous owners, Thomas and Mildred McGrath.

erty. Dupee further stated that she replaced the rusty cow-fencing and posted "No trespassing" signs in limited areas to maintain her boundary lines and protect her farm animals. Additional undisputed "evidence of human occupation and improvements on the contested land[,]" *Carnevale I*, 783 A.2d at 406, was established when the transcript from the first trial was admitted in evidence.

However, the trial court permitted testimony on the limited accessibility and visibility of Dupee's use of the disputed strip. An expert arborist, Matthew C. Largess, testified for plaintiffs that the Carnevale and Rodrigues lands were consumed by a voracious bullbriar thicket that made passage onto the Dupee land and detection of the fence and mowed areas she maintained, virtually impossible.[3] Further, Rodrigues and Peter Carnevale testified that Dupee's activity was undetectable before the time that the bullbriars were cut back, in 1991. It was suggested that the subject parcel inside the bullbriar patch could be inspected only by entering onto Dupee's land either from her North Main Road driveway, or by way of Narragansett Bay. Peter Carnevale said that it was only after his son climbed a tree on the Carnevale land that he managed to look inside Dupee's yard and discover that Dupee had encroached beyond her record boundary line. Rodrigues and Peter Carnevale testified that the aerial photos shown to them at the time of their purchases did not show evidence of Dupee's land-clearing activity. Despite these obstacles, Dupee insisted that her neighbors need not have trespassed to view the parcel because she readily would have granted permission for them to go on her property for an inspection.

In a written decision, the trial justice found that Dupee's activity on the land failed to satisfy the elements for a claim of adverse possession as required by G.L. 1956 § 34–7–1.[4] He correctly noted that Dupee had the burden of establishing by clear and convincing evidence that her possession of the disputed area had been " 'actual, open, notorious, hostile, under claim of right, continuous, and exclusive' " for ten years. *Locke v. O'Brien*, 610 A.2d 552, 555 (R.I.1992); *Altieri v. Dolan*, 423 A.2d 482, 483 (R.I.1980). Because the trial justice determined that Dupee fell short of establishing that she openly and notoriously possessed the property that the Carnevales and Rodrigues owned, he made no

---

3. While viewing a photograph of the disputed land, expert Matthew C. Largess was asked by the Carnevales's attorney whether "[w]ithin a couple of years [after cutting it down,] bullbriars could form completely around a fence of this type to the point where it's not visible?" Largess replied, "I don't know not visible, but they would—you would see the fence, maybe. But, you know, it would be really like there would be a fence, but I can't get to it. Something like that. * * * [Bullbriars are e]xtremely dense. They are like a fence, you know."

4. General Laws 1956 § 34–7–1, entitled **"Conclusive title by peaceful possession under claim of title,"** provides as follows:

"Where any person or persons, or others from whom he, she, or they derive their title, either by themselves, tenants or lessees, shall have been for the space of ten (10) years in the uninterrupted, quiet, peaceful and actual seisin and possession of any lands, tenements or hereditaments for and during that time, claiming the same as his, her or their proper, sole and rightful estate in fee simple, the actual seisin and possession shall be allowed to give and make a good and rightful title to the person or persons, their heirs and assigns forever; and any plaintiff suing for the recovery of any such lands may rely upon the possession as conclusive title thereto, and this chapter being pleaded in bar to any action that shall be brought for the lands, tenements or hereditaments, and the actual seisin and possession being duly proved, shall be allowed to be good, valid and effectual in law for barring the action."

findings on the remaining elements of adverse possession. Specifically, the trial justice found that Dupee's efforts to clear the land and mow the grass were not visible to the plaintiffs because of the dense overgrowth of bullbriars and other mature vegetation between the properties. Moreover, he found that the "No trespassing" signs Dupee posted did not apprise plaintiffs of her claim because they were not visible to the owners. Finally, the trial justice determined that the mere existence of the boundary fence was insufficient notice of Dupee's claim because it was "not visibly detectable to the true owners' property." He opined that Dupee's failure to communicate her possession to the rightful owners undercut her claim that her use was open and notorious. Dupee timely appealed.

Before this Court, defendant argues that the trial justice misconstrued the doctrine of "open and notorious" use in the context of a claim for adverse possession. The defendant asserts that the trial justice's decision was based on an erroneous belief that the inability to observe the possession of land from a road or lot line precludes such possession from being characterized as open and notorious. She maintains that her activity was neither masked nor concealed, as the trial justice suggested, and that she was under no additional affirmative duty to communicate her possessory claim. Additionally, Dupee faults the trial justice for failing to make findings of fact on the additional elements of an adverse possession claim set forth in § 34-7-1. Dupee contends that the trial justice should have considered her replacement of the fence and her maintenance of the ponds and pump house, as well as a 1948 purchase and sale agreement from the McGraths that makes reference to these permanent structures.

We address Dupee's assertions mindful that the "findings of fact of a trial justice sitting without a jury are given great weight on appeal and will not be disturbed unless they are clearly wrong or unless the trial justice overlooked or misconceived material evidence." *Carnevale I*, 783 A.2d at 408; *see also Tavares v. Beck*, 814 A.2d 346, 350 (R.I.2003) (per curiam). As this Court recognized in *Carnevale I*, this standard applies in adverse possession cases. *Carnevale I*, 783 A.2d at 408 (citing *Anthony v. Searle*, 681 A.2d 892, 898 (R.I.1996)). Applying the appropriate standard to the case before the Court on appeal, we defer to the trial justice's findings that "the area cleared by Dupee was for years inaccessible and not visible from the Carnevale/Rodrigues land due to the dense overgrowth of 'bull briars' and other mature vegetation." However, we review questions of law *de novo*. *See Carnevale I*, 783 A.2d at 408–09. Pursuant to that review, we are of the opinion that the trial justice erred in his conclusion that Dupee did not possess the property in an open and notorious manner. An owner of a parcel of land may be charged with knowledge of another's adverse use of his or her land even when the activities are obscured by dense vegetative barriers. Although it is true that the adverse possession statute never was intended to allow the possessor of property to acquire the land by concealing his claim from the record owner, *Picerne v. Sylvestre*, 122 R.I. 85, 404 A.2d 476, 479–80 (1979), the fact that a portion of land is inaccessible and not easily visible to the record owner is not conclusive evidence that the claimant's use was not "open and notorious." We decline to characterize the open clearing of land and conspicuous maintenance of fencing as actions of concealment simply because dense vegetation blocked this activity from the true owner.

This Court has addressed similar adverse possession claims and has re-

peatedly said that "the ultimate fact to be proved * * * is that the claimant has acted toward the land in question 'as would an average owner, taking properly into account the geophysical nature of this land.'" *Anthony*, 681 A.2d at 898 (quoting *Gammons v. Caswell*, 447 A.2d 361, 368 (R.I.1982)). Moreover, the notorious and openness elements are established by showing that "the claimant goes upon the land openly and uses it adversely to the true owner. The owner then becomes chargeable with knowledge of what is done openly on the land." *Gammons*, 447 A.2d at 367; *see also Anthony*, 681 A.2d at 897–98. Based on the record before us, it is likely that Dupee was indeed acting under a claim of right as would an owner of comparable land, by mowing and maintaining the vegetation and fencing that abutted her property. *See id.* at 898 (citing *Gammons*, 447 A.2d at 368, cultivating land and making other improvements as is usual for comparable land successfully relied on as proof of required possession). Moreover, Dupee's possession could well be construed as adverse to the Carnevales and Rodrigues and their successor in title. The greater question, however, is whether this use was sufficiently open to charge them with knowledge of Dupee's actions. In holding that it was, we rely on this Court's analysis in *Tavares*, issued just sixteen days after the trial justice's decision in this case.

■ In *Tavares*, this Court vacated a Superior Court judgment that claimants in the town of Tiverton failed to satisfy their burden of proof to establish adverse possession. The trial justice found that the use and possession of the undeveloped land, including the posting of no-trespassing signs, digging drainage holes, and building a stone wall, were not sufficiently open and notorious because these land-use activities were not visible from any street or lot line. *Tavares*, 814 A.2d. at 353. We held, "[the absentee owner] was still chargeable with knowing whatever was done openly on the land he owned—whether or not it could be observed from the road or from the boundary of the property." *Id.* at 352. The proper inquiry was whether the party claiming ownership by adverse possession used the property in a manner consistent with how owners of similar property would use such land and whether these uses were inclined to attract attention sufficient to place the world on constructive notice. *Id.* at 354. The case was remanded for reconsideration of the evidence to determine, among other issues, whether the claimant's use of the land met this threshold standard.

The same inquiry must be made of Dupee's use and possession of the disputed strip of land. It is apparent that Dupee's maintenance of fencing and frequent mowing were consistent with how an owner of land would use and maintain a parcel of rural land. Moreover, we are satisfied that her possession sufficiently attracted enough attention to place the world on constructive notice. Based on this Court's holding in *Tavares*, plaintiffs are chargeable with knowledge of Dupee's use of their land, despite the fact that these activities were not visible from their lot line. Having met these requirements, Dupee was under no additional duty to notify the true owners that she occupied the property under claim of right.

In sum, we hold that Dupee's possession of the disputed portion of land in the town of Jamestown was sufficiently open and notorious to meet this required element for adverse possession. It was the dense vegetation between the neighboring lands, and not a deliberate scheme on the part of defendant, that concealed her adverse possession of the parcel. The Carnevales and Rodrigues were nonetheless charged with the knowledge of her activities. Because the trial justice found that Dupee failed to

establish that she openly and notoriously possessed the disputed property, he never reached the issue of whether Dupee's possession otherwise met the requirements of § 34–7–1. Hence, we must remand the case for further findings of fact and the entry of a new judgment. The trial justice may, in his discretion, hear additional evidence.

Finally, we reject the Carnevales's argument over the inequities specific to this case, or the general unconstitutionality of the law of adverse possession.

For the reasons stated above, we reverse the judgment of the Superior Court. The record shall be remanded to the Superior Court for further proceedings consistent with this opinion. Following the entry of a new judgment, either party may appeal to this Court.

Justice FLAHERTY did not participate.